ALEXANDER R. BARKER & another *vs.* MARY B. COMINS & others.

On appeal from a decree of a probate court allowing an instrument as the will of A. B., the judge submitted to the jury these issues: " Was A. B. of sound and disposing mind and memory at the date of the alleged will? Was the alleged will procured to be made through undue influence? Is it the will of A. B.? " *Held,* that it was not erroneous for the judge to refuse to submit additional issues as to A. B.'s knowledge, wishes and mental condition, and as to the amount of his estate, and advances to his children.

Upon the issue of a testator's sanity, persons acquainted with him, although neither witnesses to the will nor medical experts, may testify whether they noticed any change in his intelligence or any want of coherence in his remarks.

A testator in his will gave a certain sum to the children of his deceased son G., " which with the advances made by me to my son G., in his lifetime, will make them share equally with my other sons." *Held,* that in considering the bearing of this provision upon the question of the testator's sanity, the word " advances " was not necessarily restricted to mean " advancements " within the Gen. Sts. c. 91, §§ 6–10, but might be taken to include any benefits which the testator might have reasonably considered an appropriation of his estate.

The burden of proving a will is on the party setting it up, but the fact that the alleged will is unreasonable in its provisions, although competent evidence on the question whether it is the testator's will, imposes on the party setting it up no new or special burden.

The fact that a testator meant to divide his property equally among his children, but that by a mistake on his part as to the value of the property, his will failed to have that effect, is not a sufficient ground for setting aside the will, if the mistake was caused not by his insanity or incapacity, but by his voluntary omission to ascertain the value correctly.

APPEAL from a decree of the Probate Court admitting an instrument to probate as the will of Abraham Barker. The ap-

pellees, Alexander R. Barker and Francis A. Barker, were the executors named in the alleged will, which was dated September 22, 1870.

By the first clause of the alleged will, Abraham Barker gave to his wife, Betsey H. Barker, the income of certain property for her life ; by the second he gave $8000 to each of his six daughters, " and all charges on my books for outfits or advances to either of my said daughters are hereby cancelled and declared void." The third and fourth clauses were as follows :

" I give and bequeath unto my son, Alexander R. Barker, for his faithful service in the whaling business in my vessels, the sum of three thousand dollars, and my large eight day clock."

" I give and bequeath unto each of the children of my late son George, viz.: Martha and Frederick, the sum of two thousand dollars, which with the advances made by me to my son George, in his lifetime, will make them equal share with my other sons."

By the fifth clause he gave to his three grandchildren, John, William and Abraham, the children of his late son John, a lot of land, valued at $3000, to be equally divided between them, and $3500 apiece ; by the sixth clause he gave " to all my other grandchildren, except the five above named, who may be living at my decease, $100 each ; " by the seventh, eighth and ninth clauses he gave sundry small legacies to charities and servants, amounting in all to $800 ; by the tenth clause he gave the property given to his wife for life, after her decease, to his ten children in equal shares ; and by the eleventh clause, he gave the residue of his estate to his four sons, Alexander, Robert, Francis and William, in equal shares.

The twelfth clause was as follows : " I order and direct that all promissory notes held by me against any of my sons at the time of my decease, whether said notes are barred by the statute of limitations or not, and all book balances as they stand on my ledger against any of my sons made since the first day of January 1865, are to be considered as a part of my estate, and as so much paid toward the share of the person against whom the notes or charges are held. But no interest is to be reckoned or claimed on any such note or book balance." By the thirteenth and last clause he appointed executors.

At the trial in this court, before *Wells*, J., the appellants asked the judge to submit the following issues to the jury :

" 1. Was Abraham Barker of sound and disposing mind and memory at the date of the alleged will? 2. Was the alleged will procured to be made through undue influence of Alexander R. Barker ? 3. Is the instrument now offered for probate the will of Abraham Barker ? 4. Did he at said time understand the amount of his property, and if not, state what he supposed it to be ? 5. What was the amount of his estate at the date of the alleged will? 6. What was the amount of his estate at his death ? 7. What was the amount of unpaid advances to George F. Barker at the time of the making of the alleged will? 8. Did Abraham Barker in making said will understand and wish that its effect would be to give to each son at least $25,000 more than to each daughter, and at least $25,000 more than to George's children, and at least $25,000 more than to John's children ? 9. Was Abraham Barker frequently and at the time of the alleged will under a delusion concerning the amount of his property? " The judge submitted the first three of these issues to the jury, but refused to submit the other issues to them.

It appeared that the estate of Abraham Barker at the date of the will was worth $273,494 ; that the value of the portion given to his wife was $55,302 ; and that she having died before.him, the amount coming to each of the four living sons would be $42,228.

The appellants offered evidence tending to show the intention of Abraham Barker to distribute his estate equally, so far as concerned his children and their representatives ; that he had been for many years in poor health with sundry bodily disorders ; that such disorders tended to mental results of fear of loss of property, depression and melancholy ; that toward the last two or three years of his life he was much disturbed by petty expenses, and " that he named his property to people at $75,000 or $100,000 less than it was." The appellants also introduced evidence tending to show that George F. Barker, the oldest son of Abraham Barker, had done many valuable services for his father from 1835 to 1864, keeping his private and business books, and sending out and receiving ships ; that all unpaid amounts, values and inter-

ests received by him from his father in any way did not exceed, with compound interest, $15,000, which would be diminished by several thousand dollars, if amounts credited on his father's books as " given to him," were not included ; that his last account with his father was balanced in 1864, by his giving his father two notes, one for $3000 and one for $3700 ; that no notes or memoranda of advancements, gifts or transfers to him were kept or left by his father other than these two notes ; that the transactions between him and his father were very large ; that some of the journals covering these transactions were not in existence, but the ledger was ; and that George F. Barker died in 1865.

On all these points the appellees introduced evidence conflicting with that introduced by the appellants ; and it appeared, without contradiction, that at the time of the execution of the will, it was read over to Abraham Barker, by his solicitor, who drew it, and that it was also taken and read over by himself.

The appellees, after proving an acquaintance of a long time between several witnesses, other than the medical and attesting witnesses, and Abraham Barker, and that these witnesses had met him frequently in the last two years of his life, and held conversations with him, or heard him make remarks in business or religious meetings, asked the witnesses the following questions : " Did you notice any change in his intelligence or understanding ? Did you notice any want of coherence in his remarks ? " The appellants objected to these questions, but the judge allowed them to be put.

The appellants asked the judge to give fourteen instructions to the jury. The first instruction prayed for was as follows : " If Abraham Barker, at the time of making the document, was laboring under a delusion as to the amount of his property, so that he regarded it as [at least $50,000] less than it was, and made his distributions under the influence of this delusion, then the document is not his will." The second was the same as the first, with the substitution of " at least $100,000 " for the words and figures in brackets ; and the third was also the same as the first, with the substitution of " materially and substantially " for the words and figures in brackets.

The fourth instruction prayed for was as follows : " If at the time of making said document Abraham Barker understood the amount of his property to vary [$50,000 or more] from what it was, and made the distribution under the influence of such misunderstanding, it is not his will."   The fifth was the same as the fourth, with the substitution of " materially and substantially " for the words and figures in brackets ; and the sixth was also the same as the fourth, with the substitution of " $100,000 " for the words and figures in brackets.

The seventh instruction prayed for was as follows : " If the effect of the alleged will, as soon as made, would be to give to each son at least [$20,000] more than to the children of George F. Barker, (including his unpaid advances,) then it is not the will of Abraham Barker."   The eighth was the same as the seventh, with the substitution of " $30,000 " for the figures in brackets ; and the ninth was also the same as the seventh, with the substitution of " $10,000 " for the figures in brackets.

The remaining instructions prayed for were as follows : " 10. If the purpose in making the alleged will was to give the daughters and sons substantial equality, and if the effect of the will, as soon as made, was to give the sons each $20,000 and upwards more than each daughter, it is not the will of Abraham Barker.   11. If Abraham Barker intended in this will to give to the children of John as much or more than to each son, and the effect of the will, as soon as made, was to give each son $20,000 more than to John's children, it is not his will.   12. ' Advances ' to a child are not the same thing as gifts or settlements for services, but are made with a view at the time of regarding them as so much on account of that child's future share.   13. Such advances can only be proved by a book charge as such, or by an acknowledgment as such, in writing, by the child or other descendant, or by the gift or grant being made at the time as an advancement. 14. Where a will is unreasonable in its provisions and inconsistent with the duties of the testator with reference to his property and family, this of itself will impose upon those claiming under the instrument the necessity of giving some reasonable explanation of the unnatural character of the will, or at least of

showing that its character is not the offspring of mental defect, obliquity or perversion."

The judge refused to give any of these instructions prayed for, except the third, which he gave, modified by the following instructions, which he also gave :

" But a mere habit of depreciatory statements about the amount of his estate, with a corresponding tendency to undervalue it in his own mind, either from despondency of temperament, or a want of confidence in the probable course or the future prospects of business, would not constitute or be sufficient, of itself alone, to prove the existence of such delusion. A material misunderstanding as to the amount of his property, if the result of delusion or incapacity to understand its real or apparent condition, amount or value, and if it was such that the provisions made by the will thereby failed to have the operation intended, might be sufficient to defeat the will, on the ground that it was not the expression of the purpose of the testator. But if, in disposing of his estate, he first determined upon certain amounts to be bestowed upon certain of those for whom he desired to provide, and then gave the residue, and intended to give it, more or less, to one or more others ; and, as between the first class and the others, he did not intend to distribute proportionally, then the fact that he omitted to ascertain correctly the value of his estate, and that he supposed it to be much less than it really was, would be no ground for setting aside the will. Even if he intended to distribute his estate proportionally, and adopted the mode he did by the provisions of his will, with the expectation that it would result in such a proportional distribution substantially, the fact that the amount of his estate was such as to defeat that expectation, and make the distribution in reality greatly unequal, ought not to defeat the will as made, provided the misapprehension as to the amount of his estate arose, not from delusion or other incapacity to understand the real state of the facts, but because he voluntarily omitted to make inquiries or an estimate of his property, and chose to make his dispositions without definite or certain knowledge of its amount or value.

" The term 'advancements,' in the statutes, with reference to the settlement of an intestate estate, applies only to advances which are charged upon the books of the deceased, or which are shown to be advances by some instrument in writing, and therefore become, by operation of law, a legal payment, in the distribution of the property, of a part of the share of a child; but this is not to be taken as the signification of the term 'advances' in this clause of the will. Before it can be used as evidence that he was not of sound mind, you must be satisfied that he had in no way conferred any benefits upon George which he might at that time reasonably consider to have been such an appropriation of his estate as with what he had given him would make him equal with the other sons; and it does not seem to me that you are to be confined to any precise form of gift, whether by notes or charges upon the books; it might apply to any benefits which he may have conferred upon George during his life.

" Where a will is unreasonable in its provisions, and inconsistent with the duties of the testator with reference to his property and family, it furnishes some ground which the jury may properly consider in connection with other evidence upon the question of loss of memory, and undue influence, or other incapacity or ground of objection. It throws no new or special burden upon the propounders of the will, and requires no special explanation. The burden is upon them throughout to satisfy the jury of the capacity of the testator, and that the instrument is in reality his will.

" Upon the third issue, unless you find that he made the will ignorant of its contents, or unless you find that he was laboring under some inability to comprehend, or to determine at the time he made it, the amount of his estate, or the effect of the distribution, then you will answer that in the affirmative, if you have answered the others favorably to the executors."

The jury answered the first and third issues submitted to them in the affirmative, and the second in the negative.

The judge reported the case for the consideration of the full court, in order that the findings of the jury might be vacated, if error had occurred in the rulings, instructions and refusals to rule

and instruct, and, subject to such revision, entered a decree allow-ing the will and admitting it to probate.

*T. M. Stetson,* (*F. B. Greene* with him,) for the appellants. Abraham Barker intended substantial equality among his twelve children, the children of those deceased taking their parents' share. His property was really $273,494, but he thought it $100,000 less. The share he meant to give to each child was about $13,500; thus each daughter was to have $8000 besides $5500, one tenth of the property in which the widow had a life estate; to John's children he gave $13,500; to George's children $4000 and his "advances," that is, only the notes or memorandum of ad-vances left by him, and amounting, with compound interest, to about $9300 more; and he meant that the residuary share left to each son should amount to the same sum; this would have been the case had the property amounted to about $156,000.

1. A distinct issue of mistake ought not to be imperilled by being mixed up in a general issue of sanity. *Shailer* v. *Bum-stead,* 99 Mass. 112, 131.

2. The evidence as to the change in Abraham Barker's intelli-gence or understanding, and the want of coherence in his remarks should not have been admitted. *Commonwealth* v. *Wilson,* 1 Gray, 337. *Commonwealth* v. *Fairbanks,* 2 Allen, 511. *Has-tings* v. *Rider,* 99 Mass. 622. *Gehrke* v. *State,* 13 Tex. 568.

3. The word "advances" should not be strained from its ordi-nary meaning. The judge allowed the additional element of "benefit conferred," which might mean aiding to get a place in the post-office.

4. The fourteenth prayer for instructions as to the burden of proof should have been given. *Shailer* v. *Bumstead,* 99 Mass. 112, 131. *Burger* v. *Hill,* 1 Bradf. 360. 1 Redfield on Wills, 515.

5. When the intended mode of distribution requires a substan-tially correct knowledge of the value of the testator's property, a substantial error therein, the effect of which is to vary the pro-portions of the intended distribution, is a reason for the refusal of probate. The burden of proof is on the appellees to show that the alleged will was not an act of mistake and accident; if the result is uncertainty the will is not proved. The fourth clause

shows that it was the intention of Abraham Barker that George should share equally with the other sons, but if this instrument is established as his will, that intent will be defeated.   The statute of frauds or of wills has no effect on this case.   It is not proposed to give a different meaning to the instrument, but to impeach it. The reason why fraud and undue influence defeat a will is because it is their effect to make the testator liable to act on a false hypothesis.   But the fact of error is worse than the liability to err.   Suppose a testator asked one of his sons to add up the list of his securities for the purpose of dividing them among his children in equal values, but in different forms of gift, and that the son, expecting to be residuary legatee, fraudulently reported the sum as smaller than it was, could the will be admitted to probate ?   But the will would be no stronger, if the son made the error innocently, or the error developed itself within the testator's mind, without the aid of the son.   *Doe* v. *Wilkinson*, 2 T. R. 209, 219.   *Cook* v. *Oakley*, 1 P. Wms. 302.   *Perrott* v. *Perrott*, 14 East, 423, 439.   *Malcolm* v. *Malcolm*, 3 Cush. 472, 477. *Zacharias* v. *Collis*, 3 Phillimore, 176.   *Marsh* v. *Tyrrell*, 2 Hagg. Eccl. 84, 122.   *Lemann* v. *Bonsall*, 1 Add. 389.   *Ingram* v. *Wyatt*, 1 Hagg. Eccl. 384, 401.   *Burger* v. *Hill*, 1 Bradf. 360. *Dew* v. *Clark*, 3 Add. 79, 203.   *Shailer* v. *Bumstead*, 99 Mass. 112, 126.   *Armorer* v. *Case*, 9 La. Ann. 288.   *Campbell* v. *French*, 3 Ves. Jr. 321.   *Doe* v. *Evans*, 2 P. & D. 378.   *Florey* v. *Florey*, 24 Ala. 241, 248.   *Huguenin* v. *Baseley*, 14 Ves. 273, 290.   *Wheadon* v. *Olds*, 20 Wend. 174.   *Attorney General* v. *Lloyd*, 3 Atk. 551.   *Attorney General* v. *Ward*, 3 Ves. Jr. 327. *Goods of Moresby*, 1 Hagg. Eccl. 378.   Gen. Sts. *c.* 92, § 25. 1 Story Eq. §§ 158, 182, 183.   3 Dane Ab. 581.   Swinburne on Wills, pt. 7, §§ 5, 11.   1 Redfield on Wills, 435, 514 note, 557 note, 572, 660.   Dig. 28, 5, 92.

*G. Marston & C. W. Clifford*, for the appellees. 1. The exclusion of the issues subsequent to the third was right.   A party is not entitled to have every controverted question of fact put separately to a jury.   The three issues submitted covered the whole case.   *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 344, 369. *Stockbridge Iron Co.* v. *Hudson Iron Co.* 102 Mass. 45.   *Boyse*

v. *Rossborough*, 6 H. L. Cas. 2, 37. *Shailer* v. *Bumstead*, 99 Mass. 112, 131.

2. The evidence objected to was rightly admitted. *Clapp* v. *Fullerton*, 34 N. Y. 190, 194.

3. There was no advancement, such as contemplated by the Gen. Sts. *c.* 91, §§ 6, 7 ; and therefore Abraham Barker could not have meant such by the use of the word "advances."

4. The instruction as to the burden of proof was correct.

5. The instructions as to any mistake by Abraham Barker in the value of his property were correct. *Bayldon* v. *Bayldon*, 3 Add. 232. *Lister* v. *Smith*, 3 Sw. & Tr. 282. *Mitchell* v. *Gard*, Ib. 75. *Shadbolt* v. *Waugh*, 3 Hagg. Eccl. 570. *Goods of Pool*, L. R. 1 P. & D. 206. *Cleobury* v. *Beckett*, 14 Beav. 583. *Mackenzie* v. *Bradbury*, 35 Beav. 617. *Agnew* v. *Pope*, 1 De G. & J. 49. *Box* v. *Barrett*, L. R. 3 Eq. 244. *Haddock* v. *Trotman*, 1 F. & F. 31. *Wyndham* v. *Chetwynd*, 1 Burr. 414, 429. *Atter* v. *Atkinson*, L. R. 1 P. & D. 665. *Hartillow* v. *Stobie*, Ib. 64. *Guardhouse* v. *Blackburn*, Ib. 109. *Fawcett* v. *Jones*, 3 Phillimore, 434, 489. *Brown* v. *Selwin*, Cas. temp. Talb. 240 ; *S. C.* 3 Bro. P. C. 607. *Fowler* v. *Fowler*, 3 P. Wms. 353. *Statham* v. *Bell*, Cowp. 40. *Mellish* v. *Mellish*, 4 Ves. 45. *Clapp* v. *Fullerton*, 34 N. Y. 190, 197. *Chaffee* v. *Baptist Missionary Convention*, 10 Paige, 85, 91. *Van Pelt* v. *Van Pelt*, 30 Barb. 134. *Watson* v. *Donnelly*, 28 Barb. 653. *Boell* v. *Schwartz*, 4 Bradf. 12. *Mann* v. *Mann*, 1 Johns. Ch. 231, 234. *In re Vanderveer*, 5 C. E. Green, 463. *Comstock* v. *Hadlyme*, 8 Conn. 254, 265. *Bent's Appeal*, 35 Conn. 523. *Walker* v. *Roberts*, 20 Ga. 15. *Armistead* v. *Armistead*, 32 Ga. 597. *Newsom* v. *Tucker*, 36 Ga. 71. *Doe* v. *Kinney*, 3 Ind. 50. *McAlister* v. *Butterfield*, 31 Ind. 25. *Perjue* v. *Perjue*, 4 Iowa, 520. *Webb* v. *Webb*, 7 Monr. 626. *Sechrest* v. *Edwards*, 4 Met. (Ky.) 163. *Shanks* v. *Christopher*, 3 A. K. Marsh. 144. *Cilley* v. *Cilley*, 34 Maine, 162. *Carr* v. *Jeannerett*, 2 McCord, 66, 74. *Iddings* v. *Iddings*, 7 S. & R. 111. *Pettes* v. *Bingham*, 10 N. H. 514, 520. *Young* v. *McKinnie*, 5 Fla. 542. *Judy* v. *Williams*, 2 Ind. 449. *Skipwith* v. *Cabell*, 19 Gratt. 758, 784. *Jackson* v. *Payne*, 2 Met. (Ky.) 567. *Stephen* v. *Walker*, 8 B. Monr. 600,

*Quinsenberry* v. *Quinsenberry*, 14 B. Monr. 481. *Tudor* v. *Tudor*, 17 B. Monr. 383. *Weems* v. *Weems*, 19 Md. 334. *Negro Cæsar* v. *Chew*, 7 G. & J. 127. *Alder* v. *Beall*, 11 G. & J. 123. *Fouke* v. *Kemp*, 5 H. & J. 135. *Moritz* v. *Brough*, 16 S. & R. 403. *Richards* v. *Dutch*, 8 Mass. 506. *Farrar* v. *Ayres*, 5 Pick. 404. *Brown* v. *Saltonstall*, 3 Met. 423.

GRAY, J. When a testamentary instrument offered for probate is executed and attested as required by statute, and has not been revoked or cancelled, only three questions can arise : 1st. Was the testator, at the time of executing the instrument, of sound and disposing mind and memory, capable of understanding the nature of the act he was doing and the relation in which he stood to the objects of his bounty and to the persons to whom the law would have given his property if he had died intestate ? 2d. Was the instrument executed under fraud or undue influence, by which his own intentions were controlled and supplanted by those of another person ? 3d. Did he execute the instrument *animo testandi*, with an understanding and purpose that it should be his last will and testament ?

The issues submitted to the jury presented these three questions in a simple, direct and intelligible form. The additional issues suggested by the appellants were rightly rejected. They were unusual and unnecessary, and would have tended to embarrass rather than to assist the jury.

The questions to the witnesses produced at the trial were rightly admitted. They did not call for the expression of an opinion upon the question whether the testator was of sound or unsound mind, which the witnesses, not being either physicians or attesting witnesses, would not be competent to give. *Hastings* v. *Rider*, 99 Mass. 622, 625. The question whether there was an apparent change in a man's intelligence or understanding, or a want of coherence in his remarks, is a matter not of opinion, but of fact, as to which any witness who has had opportunity to observe may testify, in order to put before the court or jury the acts and conduct from which the degree of his mental capacity may be inferred.

It was rightly ruled that the word "advances," as used in one clause of the will, was not restricted to "advancements," within the meaning of the Gen. Sts. *c.* 91, §§ 6–10 ; but might, in considering the bearing of that clause upon the issue of the sanity of the testator, be taken to include any benefits conferred upon his son by the testator in his lifetime, and which he might reasonably consider to have been such an appropriation of his estate as, added to what he bequeathed to him, would make him equal with his other sons.

The instruction as to the burden of proof, and the effect of unreasonableness in the provisions of the will, was correct and sufficient.

The remaining and the most important question in the case is whether there was any material omission or error in the instructions upon the effect of any mistake of the testator.

Our statute of wills declares that no will made in this Commonwealth since its enactment, (except nuncupative wills of soldiers and mariners,) "shall be effectual to pass any estate, real or personal, nor to charge or in any way affect the same, unless it is in writing and signed by the testator, or by some person in his presence and by his express direction, and attested and subscribed in his presence by three or more competent witnesses." Gen. Sts. *c.* 92, § 6.

In a court of probate, it may doubtless be shown by parol evidence that the alleged testator, at the time of signing the instrument, did not understand that it was a will, or intend that it should operate as such. *Swett* v. *Boardman,* 1 Mass. 258. *Osborn* v. *Cook,* 11 Cush. 532, 535. But if, being of sufficient mental capacity, and free from insane delusion or undue influence, he executed the instrument with a knowledge of its nature and contents, and intending that it should be his last will, its admission to probate cannot be opposed by evidence that he did not understand the legal effect of all its provisions, or truly appreciate the proportions in which his property would be thereby distributed. To allow this to be done would be to defeat, by evidence of the most unsatisfactory and untrustworthy character, an instrument voluntarily executed by a competent testator with all the forms

and solemnities which the statute makes essential to the validity of a testamentary disposition. *Mitchell* v. *Gard*, 3 Sw. & Tr. 75. *Guardhouse* v. *Blackburn*, L. R. 1 P. & D. 109. *Atter* v. *Atkinson*, Ib. 665. *Harter* v. *Harter*, L. R. 3 P. & D. 11, 12. *Gifford* v. *Dyer*, 2 R. I. 99. *Comstock* v. *Hadlyme*, 8 Conn. 254. *Iddings* v. *Iddings*, 7 S. & R. 111.

The authorities cited in the learned argument for the appellants do not, when examined, support any other conclusion. Many of those most relied on related to questions of construction of wills and codicils. Such were *Cook* v. *Oakley*, 1 P. Wms. 302; *S. C.* 2 Eq. Cas. Ab. 323, pl. 19, and 439, pl. 32; *Attorney General* v. *Lloyd*, 3 Atk. 551; *Campbell* v. *French*, 3 Ves. Jr. 321; *Attorney General* v. *Ward*, Ib. 327; *Doe* v. *Evans*, 2 P. & D. 378; *S. C.* 10 A. & E. 228; and *Malcolm* v. *Malcolm*, 3 Cush. 472. The passages cited from Swinburne on Wills, pt. 7, §§ 5, 11, so far as they involve anything more, are of no weight, inasmuch as he wrote before the passage of the statute of frauds, and when wills of personal property might be made, and wills even of real estate revoked, without writing. See pt. 1, § 12; pt. 7, § 15. The case of *Perrott* v. *Perrott*, 14 East, 423, was upon the effect of an act of cancelling a will, when no writing was required. *Lemann* v. *Bonsall*, 1 Add. 389, was a case of a nuncupative will, the whole proof of which rested in oral testimony. In *Ingram* v. *Wyatt*, 1 Hagg. Eccl. 384, and *Marsh* v. *Tyrrell*, 2 Hagg. Eccl. 84, the wills were made by persons of weak mind and under circumstances strongly inferring fraud and circumvention, in *Zacharias* v. *Collis*, 3 Phillimore, 176, it appeared that the instrument was not understood or intended to be a will at all; and these three cases were but decisions upon the insufficiency of evidence, made by a judge trying law and facts together, and before Parliament had passed any statute requiring peculiar formalities in wills of personal estate. The cases, already referred to, decided in the new court of probate under the St. of 1 Vict. *c.* 26, have put the matter upon the right footing.

In the report now before us, it is found as a fact that the will, at the time of its execution, was read by the testator himself, as well as read to him by the solicitor who drew it. It would be

superfluous to go over in detail the instructions requested by the appellants or those given by the judge who presided at the trial. Tested by the rules already stated, it is clear that all the requests, except the third, were rightly refused, and that the modifications and additions with which the third was submitted to the jury were sufficiently favorable to the appellants.

*Decree affirmed.*