EDWARD A. DAVIS & others *vs.* EDNA J. DAVIS, executrix.

Middlesex.  Jan. 10. — 11, 1878.  AMES & LORD, JJ., absent.
        Jan. 21. — 22, 1878.  ENDICOTT & LORD, JJ., absent.

An order of a justice of this court, on a probate appeal, declining to submit particular issues of fact to a jury, cannot be revised by bill of exceptions, but only by appeal.

The burden of proving that the execution of a will, offered for probate, was procured by fraud or undue influence is upon the party alleging it.

On the trial of the issue of fraud or undue influence in procuring the execution of a will, no exception lies to the exclusion of evidence of the testator's statements and declarations, subsequent to the execution of the will, as to its contents, not appearing to have been made so soon thereafter or so connected with evidence of his previous state of mind as to have any legitimate bearing upon the issue.

On the trial of issues of a testator's sanity and of fraud or undue influence, on an appeal from the allowance of a will by which the testator authorized his wife, who was executrix, if the income of the estate was insufficient, to use so much of the principal as might be necessary for her support, the presiding judge gave instructions to the jury upon both issues, which were not objected to, and, refusing to give in terms certain specific requests for instructions by the appellants, also instructed the jury that if they were satisfied that testator executed the will and that he was of sound mind, and that the will was read to him twice, and that he suggested an alteration in it which was made, it was to be presumed that he knew what it contained, and that it was not for them to inquire into the meaning attached by him to its provisions unless he was deceived as to its contents; that if the attorney who drew the will had answered falsely when inquired of as to the meaning of particular clauses, or had made different provisions from what he was instructed to make, falsely representing them as having the effect intended by the testator, it would be a fraud on the testator; and that the clause as to the use of the principal authorized the wife to use it if necessary, either at her own discretion or under direction of the court, and if the testator instructed the attorney that he wished her to have authority to so use the principal, and, on hearing the clause read, did not inquire as to whether there would be any control over her in exercising the right to use it, the silence of the attorney was not evidence of fraud, and it was immaterial whether the clause gave the wife an absolute discretion in the matter or not. *Held,* that the instructions were sufficiently favorable to the party contesting the validity of the will.

PETITION to establish the truth of exceptions disallowed at the hearing and trial of an appeal from a decree of the Probate

Court, admitting an instrument to probate as the will of Thomas Davis, by which he appointed his wife, Edna J. Davis, executrix; directed his executrix to furnish his son Franklin M. Davis a suitable support out of the estate until he became of age; devised and bequeathed all the residue of his estate to his wife, so long as she should remain unmarried and his widow, with remainder, on her decease or marriage, to his four sons, to be divided among them and the issue of any deceased son by right of representation; directed that the share of his youngest son, Franklin M., in his estate, together with the estate transmitted to him by his mother, should not exceed the share of his other sons in his estate; and authorized his wife, so long as she should remain unmarried and his widow, to sell at public or private sale any part or all of his real estate, when it could be done to advantage, and to execute proper conveyances of the same, the proceeds to be deposited in a savings bank, or, with any personal property left by the testator, to be invested in certain securities, and his wife, if the income of the estate was insufficient, to use so much of the principal as might be necessary for her support.

The reasons of appeal were as follows: 1st. " Because the said instrument was illegally made and executed. 2d. Because the said Thomas Davis, at the time when he executed said instrument, was not in a sound and disposing state of mind. 3d. Because said Thomas Davis was induced to execute said instrument by misrepresentation, deception and fraud. 4th. Because said Thomas Davis was induced to execute said instrument by undue influence."

The present petition alleged that upon an application to frame issues to a jury, *Soule*, J., ordered that the only questions submitted to them should be, 1st, whether the deceased, at the time of executing the instrument, was of sound mind; 2d, whether the execution of the instrument was procured by the fraud and undue influence of the executrix, and of others acting in her behalf; and refused the request of the appellants that the following additional questions should be submitted to the jury: 3d, whether the instrument was the will of the deceased, executed by him with knowledge of its contents; 4th, whether the deceased, at the date of the instrument, wished or intended to give his wife the right, in her own discretion, to dispose of his

whole estate, or of any part of the principal thereof; and that to this order and refusal the appellants alleged exceptions.

The petition further alleged, in substance, that a trial by jury was had upon issues framed according to the order aforesaid, and a verdict returned thereon in favor of the executrix; that at such trial other exceptions were taken, and, together with the exception before mentioned, were reduced to writing, filed, notified to the adverse party, and presented to the judge, within three days after the verdict; that the judge, after hearing the counsel of the parties, prepared a new draft of the bill of exceptions, stating the same questions and in the same aspect as in the bill of exceptions presented to him by the appellants, except in omitting their exception to the order and ruling upon the issues to be submitted to the jury; and that the judge made a certificate under his hand, disallowing the bill of exceptions presented as incorrect, because no exception had been taken to his refusal to submit the additional issues to the jury, but expressing his readiness, if the appellants would strike out the alleged exception to such refusal, to allow a bill of exceptions substantially as drawn by him as a substitute for the bill presented.

The petition prayed that the truth of all the exceptions might be established; and the petitioner moved that it might be referred to a commissioner to report the facts to the court.

By direction of the court, the argument was confined, in the first instance, to the questions, whether the refusal to submit the additional issues to the jury was the subject of exception; whether these issues were included in the reasons of appeal; and whether, if the exception to such refusal was rightly disallowed, the petitioners were entitled to be heard upon the exceptions taken at the trial.

*C. H. Hudson*, (*C. Abbott* with him,) for the petitioners.

*T. H. Sweetser*, (*G. A. A. Pevey* with him,) *contra*.

GRAY, C. J. It was said by this court, in a case which involved a large amount of property, and which was fully and ably argued and carefully considered upon a report of the justice before whom the issues were framed and the trial had, that when a testamentary instrument offered for probate is executed and attested as required by statute, and has not been revoked or cancelled, only three questions can arise : 1st. Was the testator

at the time of executing the instrument, of sound and dispos-
ing mind and memory? 2d. Was the instrument executed by
him under fraud or undue influence? 3d. Did he execute the
instrument *animo testandi? Barker* v. *Comins*, 110 Mass. 477,
487.

In the present case, the first and second of these questions
were submitted to the jury; and it may well be doubted whether
the third question was included in the reasons of appeal, or was
fairly presented by the additional issues tendered and disal-
lowed. But we have no occasion to consider this, because the
refusal to submit these issues to the jury is not the subject of
exception.

By the Constitution and laws of the Commonwealth, trial by
jury in probate appeals is not a matter of right, but rests in the
usages and discretion of the court. The fifteenth article of the
Declaration of Rights, which secures trial by jury, expressly ex-
cepts "cases in which it has heretofore been otherways used and
practised;" and before the adoption of the Constitution, and for
some time after, all appeals from judges of probate were heard
and determined by the Governor and Council, without a jury.
Province Charter, 1 Prov. Laws, (State ed.) 15. Const. Mass.
*c.* 3, § 5. St. 1783, *c.* 46. *Peters* v. *Peters*, 8 Cush. 529, 541.
The statute which first made this court the Supreme Court of
Probate contained a provision, which has been continued in
force by successive reënactments, that when it appears, from
the reasons of appeal, that the sanity of the testator, or the
attestation of the witnesses in his presence, is in controversy,
the court "may, for the determination thereof, direct a real or
feigned issue to be tried before a jury." Sts. 1783, *c.* 46, § 4;
1817, *c.* 190, § 7. Rev. Sts. *c.* 62, § 16. Gen. Sts. *c.* 92, § 20.
And in 1836 this provision was extended by enacting that "if,
upon the hearing of an appeal in the Supreme Court of Probate,
any question of fact shall occur, that is proper for a trial by jury,
the court may cause it to be so tried, upon an issue to be formed
for the purpose under the direction of the court." Rev. Sts.
*c.* 83, § 46, and Commissioners' Report, § 44 and note. Gen. Sts.
*c.* 117, § 18.

It has been the practice of the court, upon the request of either
party to a probate appeal, to submit to a jury the question of the

execution or attestation of an instrument offered for probate as a will, or of the sanity of the testator, or of undue influence; and other issues of fact have been sometimes ordered to be so tried. An order granting or refusing such a trial is not a ruling upon a matter of law, but depends upon the discretion of the judge in each case. Exceptions lie to rulings in matter of law only; and the proper mode of revising an order of a justice of this court, which involves matter of fact or of discretion, in a cause of equity or of probate jurisdiction, is by appeal. Gen. Sts. *c.* 115, § 7; *c.* 113, §§ 8–11; *c.* 117, § 14. *Stockbridge Iron Co.* v. *Hudson Iron Co.* 102 Mass. 45. *Brooks* v. *Tarbell*, 103 Mass. 496. *Ross* v. *New England Ins. Co.* 120 Mass. 113. *Newell* v. *Homer*, 120 Mass. 277, 281.

As the appellants had no right of exception to the order regulating the issues to the jury, the presiding judge might properly disallow a bill of exceptions which contained an exception to that order; and, so far as concerns that exception, the present petition cannot be maintained. But the disallowance of that exception does not defeat the right of the petitioners to establish the truth of the exceptions taken at the subsequent trial. *Sawyer* v. *Yale Iron Works*, 116 Mass. 424, 433, and cases cited. The petitioners' counsel having expressed his readiness to waive the first exception, if the court should be of opinion that it could not be allowed, and both counsel having agreed that the other exceptions are truly stated in the draft of the presiding justice, there is no question of fact that requires a reference to a commissioner, and the exceptions taken at the trial may be argued upon that draft. *Further argument accordingly.*

The judge's draft of the bill of exceptions was in substance as follows:

At the trial of the two issues framed by order of this court, the three attesting witnesses were produced, and testified that the testator was of sound mind when he executed the will, and that he signed it in their presence, and that they witnessed it as his will at his request. No question was made as to the due formality of the execution.

The attesting witnesses were the attending physician, the attorney at law who drew the will, and a neighbor of the tes-

tator. It appeared that the physician, having been told by the testator that he wished to make his will and wanted a Boston lawyer, recommended the attorney, who was employed, as being capable and likely to charge a smaller fee than a Boston lawyer would charge ; and, at the request of the testator, asked the attorney to go to the testator's house. The attorney, who had never known the testator before, nor the executrix, went as requested, was asked by the testator what his charge for the service would be, and, his reply being satisfactory, was instructed as to the wishes of the testator.

The attorney testified that the testator spoke of one Pfaff, who left his property to his wife as long as she was a widow ; that he called in his wife, and said he wanted her to hear what he was going to do ; that she said she did not want to know what he proposed to do with his property, and went out of the room ; that the testator continued, saying that he wanted the property so left that after his wife had done with it the four children would share equally, including what would come to the youngest child from his mother, to whom he had already given some property ; that the witness spoke about authority to the executrix to sell real estate, and the testator said he wanted her to have authority to sell, if she could do it to advantage, but did not want the property sacrificed ; spoke of the way of investing the proceeds, and said, in answer to the inquiry of the attorney whether he wished her to have the right to use the principal, that he did wish her to, if needed, and, on being asked if he wished her to be exempt from giving bonds, answered, " No, she would better give sureties in the ordinary way." The attorney took minutes of the instructions, went home and drew the will, leaving a blank to be filled relative to the personal property. A few days after, he went to the testator's house and read the will to him, and made an interlineation in the will at the testator's direction, who then asked him to read it again, which the attorney did ; the testator thought it over a few minutes and said it was satisfactory, and it was executed. The testator told the attorney that the estate consisted of houses in Boston and Somerville and Everett, and a mortgage which had been reduced to four thousand dollars, and twelve hundred dollars in a bank, and that there was a house in Charlestown which he had caused to be conveyed to

his wife. There was no conflict of testimony as to what occurred between the testator and the attorney, nor as to what took place when the will was executed.

It was in evidence that the testator was in feeble health when the will was signed, and had been for a long time in the daily use of morphine under a physician's direction, and that the executrix was his second wife, and mother of his youngest son, he having three sons by a former wife, who were all of full age, and had supported themselves for many years. These three sons are the contestants and appellants. The will was not read in the presence of the witnesses.

There was conflicting testimony as to the physical and mental condition of the testator about the time the will was signed.

Subsequent statements made by the testator as to the contents of his will were offered by the contestants, as throwing light on his mental condition when the will was signed, and were admitted.

It was in evidence that the contestants seldom visited their father until after they learned that he had made his will; then their visits were more frequent. And they introduced evidence tending to show that either the executrix or the nurse was generally in the room when they saw him, and that they saw him alone only in one or two instances; but there was no evidence of any request on their part to see him alone except once when the testator, after an interview with one of the contestants, requested the executrix, on her entering his room, to remain there.

It was in evidence that no explanation of the meaning of any clause in the will was made to the testator; and that he was physically weak, and had formerly been intemperate in the use of spirituous liquors, and that the executrix was a robust woman. There was no evidence of any specific attempt to influence the testator in relation to his will, nor to mislead him as to the contents of the will when drawn up; though there was evidence which the contestants contended tended to show that the wife exercised control over the husband.

The counsel for the appellants asked the court to instruct the jury as follows: "1. If, owing to the feebleness of body and mind of the testator, the discretionary power of the wife to sell, and its effect on the character of the instrument was not likely

to be observed by him on a single reading to him, it was a fraud. 2. If this instrument was signed by the testator in ignorance of its contents or true character, and was contrary to his intentions, it was a fraud, and the presumption is that it was obtained by undue influence and fraud. 3. The power to spend a part of the principal, as the clause stands in the instrument, is a purely discretionary power. 4. The burden of proof was on the executrix."

The judge declined to give any of these instructions in terms ; but submitted the case to the jury under instructions as to soundness of mind and as to what constitutes undue influence, which were not objected to; and instructed them that the burden was on the executrix to prove the execution of the will and that the testator was of sound mind when he signed it ; and that the burden was on the appellants to prove that the will was procured by fraud or undue influence ; that if they were satisfied that the testator executed the will and that he was of sound mind, and that the will was read to him twice, and that he suggested an alteration in it which was made, it was to be presumed that he knew what it contained, and that it was not for them to inquire into the meaning which he attached to particular clauses or provisions in it, unless they should be of opinion that he had been misled or deceived by the person who read the will to him as to what it contained; that if the attorney was inquired of as to the meaning of particular clauses and had given a false answer, or had been instructed to make particular provisions in the will and had made provisions of a different character, and had falsely represented that such provisions had the effect which the testator intended, that would be fraud on the testator. That the clause giving the wife authority to use the principal of the estate, if necessary, authorized her to use it, if necessary, either at her own discretion or under direction of the court, and if the testator instructed the attorney that he wished her to have authority to use the principal, if necessary, and on hearing the clause read made no inquiries as to whether there would be any control over her in exercising the right to use it, the silence of the attorney was not evidence of fraud, and it was wholly immaterial to the case whether the clause gave the wife an absolute discretion in the matter or not.

The jury were further instructed that the evidence of statements and declarations of the testator, made after the will was signed, were to be considered by them only on the question of his mental capacity to make a will, and not upon the question whether the will was made in accordance with his instructions or wishes at the time of its execution.

The verdict was in favor of the executrix upon both issues; and the appellants alleged exceptions.

*C. H. Hudson*, ( *C. Abbott* with him,) for the appellants.

*G. A. A. Pevey*, for the appellee, was not called upon.

BY THE COURT. The ruling as to the burden of proof was correct. *Baldwin* v. *Parker*, 99 Mass. 79. The subsequent statements and declarations of the testator appear to have been offered in evidence upon the issue of sanity only, and do not appear to have been made so soon after the execution of the will, or to have been so connected with evidence of his previous state of mind, that they could have any legitimate bearing upon the issue of undue influence. *Shailer* v. *Bumstead*, 99 Mass. 112. The only issues on trial were of sanity and undue influence. The bill of exceptions shows that instructions were given to the jury upon both these issues, which were not objected to and are not reported. The instructions given upon the subjects of the special requests of the appellants were sufficiently favorable to them, and were all that the case required.

*Exceptions overruled.*