MARY ANN DORR *vs.* TREMONT NATIONAL BANK.

Suffolk.   Nov. 21, 1878. — Feb. 27, 1880.   COLT & MORTON, JJ., absent.

Under the statutes of this Commonwealth, rulings in matter of law at the trial
    of issues of fact in equity may be brought before the full court by bill of
    exceptions.
In a suit in equity against a corporation to compel a certificate of stock to be
    issued to the plaintiff, the answer admitted that the plaintiff had been the owner
    of the certificate, but alleged that she had executed a power of attorney author-
    izing its transfer, and that it had been transferred accordingly; and a justice
    of this court passed this order: "The defendant alleges that the plaintiff signed
    and executed an instrument purporting to be a power of attorney; and the
    plaintiff denies that she ever signed or executed said instrument; and · it is
    ordered by the court, on motion of the plaintiff, that an issue be tried by a
    jury of this court whether the plaintiff signed and executed said instrument."
    *Held,* that the issue was not only directed, but framed, and that no more formal
    issue was necessary.   *Held, also,* that on the trial of this issue the plaintiff had
    the right to open and close.
No exception lies to the refusal to receive further evidence upon a point expressly
    admitted by the adverse party.

BILL IN EQUITY, filed October 26, 1875, alleging that, on June
13, 1870, the plaintiff was the owner of forty-one shares in the
capital stock of the defendant corporation, standing in her name

on its books, and held a certificate therefor; that prior to that time she had employed Abraham Jackson to collect the dividends on these shares, and had entrusted to him the certificate thereof; that Jackson, without the authority of the plaintiff, fraudulently caused Henshaw & Brother, a firm of stock auctioneers, on or about June 13, 1870, to sell thirty-nine of her shares, and caused the certificate of the forty-one shares to be delivered to Henshaw & Brother, who were permitted to transfer on the defendant's books thirty-nine of the shares to persons to whom they had sold them, and to transfer the other two shares to Jackson; that Henshaw & Brother delivered to the defendant the certificate of forty-one shares, and the defendant issued and delivered new certificates to the purchasers and to Jackson; that the plaintiff did not authorize Jackson to sell her shares of stock, nor Henshaw & Brother to transfer them, and that the defendant carelessly and negligently permitted the transfer to be made; that Jackson received and converted to his own use the two shares and the proceeds of the sale of the thirty-nine shares; that Jackson, after the transfer of the stock, continued to pay to the plaintiff the dividends declared thereon until April 1875; and that the plaintiff was ignorant until that time that the transfer had been made and new certificates issued. The bill then alleged a demand for a new certificate of forty-one shares, and a refusal by the defendant; and concluded with a prayer that the defendant issue a new certificate for forty-one shares, or pay her the value thereof in money; and for further relief.

The answer admitted that the plaintiff had originally owned the shares of stock; but alleged that she had executed a power of attorney in blank to transfer them, and had delivered this power to Jackson, who had given the power with the certificate to Henshaw & Brother; and that the transfer on the books of the defendant had been made without negligence on its part, and upon presentation of this power of attorney and surrender of the old certificate; and set up laches on the part of the plaintiff. Annexed to the answer was a copy of the power of attorney purporting to be signed by "Mary Ann Dorr," and dated January 29, 1870.

On December 5, 1876, *Endicott*, J., made the following order: "In the above-entitled case, the defendant alleges that the plain-

tiff signed and executed an instrument, purporting to be a power of attorney, a copy whereof is annexed to the defendant's answer in said cause; and the plaintiff denies that she ever signed or executed said instrument; and it is ordered by the court, on motion of the plaintiff, that an issue be tried by a jury of this court whether Mary Ann Dorr, the plaintiff, signed and executed said instrument."

The case then came on for trial before *Lord*, J. Before the trial commenced, the defendant claimed the right to open and close, and called the attention of the judge to the issue as framed. The judge stated that he regarded the paper referred to, not as an issue, but as an order directing the framing of an issue; that there was no pleading between the parties, except the bill and answer; that either party might apply to him to have an issue framed, or, if both parties consented, they might go to the jury on the question whether the plaintiff signed and executed the instrument claimed to be a power of attorney, as a question to be answered by the jury; and asked the counsel on both sides whether they desired the framing of any further issues, saying that, if they did, he would either frame or direct an issue to be framed, and, if they did not, he would submit the question raised in the order to the jury, to be answered by them. Both counsel stated that they did not desire any further issues framed, or any change in the pleadings, and consented that the question might be submitted to the jury in the form suggested. The judge then directed the trial to proceed; and ruled that, as there were no pleadings except the bill and answer, the plaintiff was entitled to the opening and close. To this ruling the defendant excepted.

The plaintiff's counsel then opened the case to the jury. The plaintiff testified that she never authorized a transfer of the stock; and then rested her case. The defendant, after cross-examination of the plaintiff, offered evidence of the execution of the power; and the plaintiff, against the defendant's objection, was permitted to put in rebutting evidence.

It appeared that the plaintiff was a widow living in Keene, New Hampshire; and owned forty-one shares in the capital stock of the defendant prior to the transfer of that stock in June 1870, under the power of attorney which she contended was a

forgery. There was evidence tending to show that as early as the year 1865 the plaintiff became acquainted with Abraham Jackson, a lawyer of Boston, and caused him to be appointed her trustee under her husband's will; that she had about the year 1868 employed him as her counsel in litigation in New York, which lasted several years; that she had visited at the house where Jackson boarded in Boston, and that he had visited her, at her request, at her house in Keene; that she had been in the habit of constantly consulting him upon her affairs, both as a man of business and as a friend, and of deferring to his judgment; and that her confidence in him, both as her friend and counsel, was unbounded down to a period long after June 1870, in which month she went abroad, leaving her certificates of other property of her own in his hands, with a power of attorney to collect interest on registered United States bonds.

The defendant contended that the relations between the parties rendered it exceedingly probable that she would have yielded to the advice and suggestions of Jackson, and would have given him the disposal of the stock on any ground ostensibly for her benefit by which he might have fraudulently sought to get the disposal of the stock, and made it extremely improbable that he should have resorted to forgery.

The defendant produced about one hundred and sixty letters from the plaintiff to Jackson, written from 1865 to the spring of 1875, and which had been submitted to the examination of the plaintiff's counsel, with notice that they would be offered in evidence; and, having given notice to the plaintiff to produce the letters of Jackson during the same period, offered to put in the whole correspondence as showing the relations between the parties, both before and after the giving of the paper in question. Sixteen of these letters had already been put in evidence, during the cross-examination of the plaintiff, and otherwise. The genuineness of all the letters was conceded, and they were all admitted as standards of the plaintiff's handwriting, and for the purpose of showing that her usual signature was "Mary A. Dorr" The defendant then offered the whole correspondence as showing the relations between the plaintiff and Jackson; and the judge ruled, that the correspondence could not be admitted as a whole for this purpose, but that each letter must be offered

and passed upon separately; and to this ruling the defendant excepted.

The defendant then offered in evidence two letters from the plaintiff to Jackson. In the first, dated July 12, 1865, was this language: "There must be something due to you and Mr. Farnsworth. You have both been indefatigable in my cause, which I shall ever remember with gratitude. I shall give myself no anxiety about matters when they are completely in your hands, only to remind you of the taxes of 1862 and 1863, and I don't know how many years before." In the second, dated July 19, 1867, the plaintiff wrote of her thinking of going to Europe; said she wrote to ask him if he thought it advisable, "for your judgment is everything to me;" spoke of renting her house to a certain person, and said, "I did not enter into any agreement, of course, as I wish to consult you in every particular."

The plaintiff's counsel admitted that the relations between the plaintiff and Abraham Jackson were intimate; that she sought his advice on matters of business, and consulted him, and had entire confidence in him; and that she trusted him implicitly in all matters in which she had any interest, to the fullest extent claimed by the defendant as herein stated.

The judge declined to allow the letters to be read for the mere purpose of showing the relation of the parties, because such relation had been fully admitted; but ruled that any letter which was offered would be admitted, if there was anything in it bearing upon the issue on trial.

The jury returned a verdict that the plaintiff did not sign the power of attorney; and the defendant tendered a bill of exceptions, which was allowed by the judge.

The case was afterwards heard before *Colt*, J., who made a report thereof for the determination of the full court, in which, at the defendant's request, the bill of exceptions was incorporated, in order that its rights might be preserved as if a motion for a new trial had been made for the causes therein stated. The report then set forth the testimony of the cashier of the defendant, to the effect that a member of the firm of Henshaw & Brother, respectable stock auctioneers, presented the old certificate and a power of attorney purporting to be signed by the plaintiff, and he directed the transfer to be made on June 30.

1870; that there was nothing in the transaction to excite, or which did excite, his suspicion; and that no objection was made to the transfer until after the insolvency and arrest of Jackson in the spring of 1875. The report also stated the evidence at length bearing upon the question of the plaintiff's laches, which is omitted, as presenting merely a question of fact. Upon the testimony the judge found that there was nothing in the conduct of the plaintiff to preclude her from maintaining the bill; and that, upon the whole case, she was entitled to a decree as prayed for, subject to the determination of the full court on the question of a new trial on the issue as to the signature of the power of attorney, and on the questions presented at this hearing.

*R. M. Morse, Jr.*, (*F. V. Balch* with him,) for the defendant.

*N. Morse & E. W. Hutchins*, for the plaintiff.

GRAY, C. J. 1. In the practice of most courts of chancery, a bill of exceptions is unknown, and the rulings of a judge presiding at the trial by jury of issues out of chancery can be revised only upon motion for a new trial in the court which ordered the issues. *Lewis* v. *Armstrong*, 3 Myl. & K. 45; 2 Cr. & M. 274. *Clayton* v. *Nugent*, 8 Jur. 867; *S. C.* 1 Collyer, 362; 13 M. & W. 200. *Ex parte Story*, 12 Pet. 339. *Watt* v. *Starke*, 101 U. S. 247. But by the statutes of this Commonwealth, and the practice of this court under them, bills of exceptions have long been allowable in cases in equity, as well as in actions at common law.

Under the Revised Statutes of 1836, and until 1859, no appeal lay from the decision of a single justice of this court in any branch of its jurisdiction; but his rulings in matter of law might be revised by the full court on report, on motion for a new trial, or on bill of exceptions. Rev. Sts. *c.* 81, §§ 26–30. Section 26 expressly permitted the reservation on report of any question of law arising " in any trial or other proceeding, either of a civil or criminal nature, at law or in equity; " and the succeeding sections, as to motions for new trials and bills of exceptions, were manifestly intended to be equally comprehensive, and were so understood in practice; and bills of exceptions to decisions upon questions of law at final hearings in equity were allowed by Chief Justice Shaw, and passed upon by the full court. *Parker*

v. *May*, 5 Cush. 336, 355, 356. *Hancock* v. *Carlton*, 6 Gray, 39, 63.

By the St. of 1853, *c.* 371, suits for certain objects, which had previously been of equity jurisdiction, were required to be by action at law, praying for relief in equity. Suits so brought were the only mode of enforcing equitable remedies in cases within that statute, until the right to proceed by bill in equity was restored by the Sts. of 1855, *c.* 194, and 1856, *c.* 38; and they were treated as, in their nature and incidents, suits in equity; yet rulings upon the admission of evidence, at the trial by a jury of issues ordered therein, were revised by bill of exceptions. *Crittenden* v. *Field*, 8 Gray, 621. *Irvin* v. *Gregory*, 13 Gray, 215. *Topliff* v. *Jackson*, 12 Gray, 565. *Crane* v. *Adams*, 16 Gray, 542.

The act of 1859, establishing the Superior Court, and providing for bills of exceptions to opinions, rulings, directions and judgments of that court in matter of law in any case, civil or criminal, did not affect the jurisdiction or the forms of proceeding in equity. St. 1859, *c.* 196, §§ 6, 27, 37, 50–52. The equity act of the same year, the provisions of which are substantially reënacted in the General Statutes, introduced the practice of courts of chancery elsewhere, so far as to require all cases in equity, and all motions and applications therein, to be heard in the first instance before a single justice, and to allow an appeal, on facts as well as law, from all his decrees, interlocutory or final, to the full court; empowered him, upon a hearing for final decree, to report the whole case to the full court for its decision; and provided that the full court, or any justice thereof, might frame issues in equity, and direct them to be tried at the bar, either of this court or of the Superior Court; but contained no express repeal of previous statutes. St. 1859, *c.* 237. Gen. Sts. *c.* 113. And by the Gen. Sts. *c.* 115, § 7, "in all cases, civil or criminal, whether according to the course of the common law or otherwise," any opinion, ruling, direction or judgment of a judge, either of this court or of the Superior Court, in matter of law, (except on pleas in abatement, or motions to dismiss for defect of form in process,) may be the subject of a bill of exceptions.

Under these statutes, bills of exceptions have been allowed and entertained to decisions of justices of this court sitting in

equity, as well as to rulings at the trial of issues in equity before a jury, either in the Superior Court or in this court. *National Mahaiwe Bank* v. *Barry*, 125 Mass. 20. *Southbridge Savings Bank* v. *Exeter Works*, 127 Mass. 542. *Williams* v. *Robbins*, 15 Gray, 590. *Hodges* v. *Pingree*, 108 Mass. 585. *Brooks* v. *Tarbell*, 103 Mass. 496. *Cobb* v. *Boston*, 112 Mass. 181. In *Stockbridge Iron Co.* v. *Hudson Iron Co.* 107 Mass. 290, 298–300, exceptions were alleged, by counsel of great eminence and experience, at the trial by a jury of issues in equity, and were not allowed in the form of a bill of exceptions, merely because other questions in the cause were reserved for the determination of the full court, which could be more appropriately presented in the form of a report, and the exceptions were therefore incorporated in the report, in accordance with the practice in actions at law, as settled in *Aldrich* v. *Boston & Worcester Railroad*, 100 Mass. 31.

So in probate appeals, in which parties now have the same rights as in equity causes, including the right of appeal from a single justice in matter of fact or of discretion, as well as in matter of law; St. 1859, *c*. 237, § 12; Gen. Sts. *c*. 117, § 14; *Wright* v. *Wright*, 13 Allen, 207; questions of law arising at the trial of issues before a jury have been brought to the full court by bill of exceptions. *McKeone* v. *Barnes*, 108 Mass. 344. *Lewis* v. *Mason*, 109 Mass. 169. *Nash* v. *Hunt*, 116 Mass. 237. *Newell* v. *Homer*, 120 Mass. 277. *Davis* v. *Davis*, 123 Mass. 590. *May* v. *Bradlee*, 127 Mass. 414.

A thorough examination of the books of reports might disclose additional instances of bills of exceptions to rulings in matter of law at the trial before a jury of issues in equity or in probate causes. The reasons why they are not more numerous are, that very few issues in equity have been sent to the Superior Court for trial, and that the justices of this court, as a matter of courtesy to counsel, have generally reserved rulings made upon questions of importance in the form of a report, without requiring a bill of exceptions to be tendered.

Whether any and what issues in equity or probate shall be submitted to a jury is a subject of appeal under the Gen. Sts. *c*. 113, § 10, and not of a bill of exceptions, because it involves a question of discretion, and not merely of law. *Crittenden* v.

*Field*, and *Brooks* v. *Tarbell*, above cited.    *Stockbridge Iron Co.*
v. *Hudson Iron Co.* 102 Mass. 45.    *Ross* v. *New England Ins. Co.*
120 Mass. 113.    *Davis* v. *Davis*, 123 Mass. 590, 594.    But the
cases before referred to conclusively establish in this Common-
wealth the authority to revise upon bills of exceptions rulings in
matter of law at the trial of issues in equity before a jury.

When rulings at the trial of an issue by a jury have been
brought before a court of chancery elsewhere, on a motion for a
new trial and a report of the whole evidence, the court has
indeed declined to set aside the verdict on account of the im-
proper admission or rejection of testimony, when satisfied that,
if the ruling had been different, the verdict ought to have been
the same.    *Hampson* v. *Hampson*, 3 Ves. & B. 41.    *Barker* v.
*Ray*, 2 Russ. 63, 76.    *Apthorp* v. *Comstock*, 2 Paige, 482, 488.
*Watt* v. *Starke*, 101 U. S. 247.    But a bill of exceptions, under
our practice, brings up nothing but questions of law, and pre-
sents those questions only for the decision of the full court.

The practice of revising rulings in matter of law in equity
causes by bill of exceptions, which grew up, as we have seen, be-
fore appeals were allowed from a single justice sitting in equity
to the full court, has been retained since such appeals have been
authorized by statute, and often affords a convenient method of
enabling a party, aggrieved by the ruling of a single justice in
matter of law, to obtain relief, without obliging him to furnish
a report of all the evidence, or compelling the full court to hear
an argument upon the whole case.

The questions of law raised at the trial of the issue before the
jury are therefore properly before us upon the bill of exceptions
allowed by Mr. Justice Lord, who presided at that trial.

2. In the practice of this court, issues to a jury in equity or
probate causes have commonly been framed in one of three
forms:

First. By directing the parties to plead to issue, and submit-
ting to the jury the issue joined on their pleadings, in accord-
ance with the former practice in England and in New York.
Seton on Decrees (3d ed.) 984.    *Frank* v. *Frank*, 2 Mood. &
Rob. 314.    *Phillips* v. *Thompson*, 1 Johns. Ch. 131, 152.    *Phelps*
v. *Hartwell*, 1 Mass. 71.    *Crowninshield* v. *Crowninshield*, 2 Gray,
524.    *Hodges* v. *Pingree*, 2 Chit. Pl. (16th Am. ed.) 128; *S. C.*

108 Mass. 585. *Briggs* v. *Titcomb*, Suffolk, April term 1865, in which the issues on file are in the handwriting of Chief Justice Bigelow.

Second. By reciting in the order what the one party alleges and the other denies, and directing the issue made by such allegation and denial to be tried by a jury, in substantial accordance with the form of a feigned issue, given in the St. of 8 & 9 Vict. c. 109, § 19, and with the order in this case, and usually in this form : " Whereas the plaintiff alleges, and the defendant denies," (stating the question in dispute,) " now therefore it is ordered that a jury be empanelled to try said issues." Instances of such orders made by Chief Justice Chapman are upon the files of the court in the suit in equity of *Vinton* v. *Simmons*, and in the probate appeal of *Winslow* v. *Coates*, Suffolk, April term 1870.

Third. By directing an issue framed in the form of a simple question, and recited in the order, to be tried by a jury. This mode of framing issues has been long used in this Commonwealth, and in some counties almost exclusively used. *Eames* v. *Eames*, Middlesex Rec. 1835, fol. 139; *S. C.* 16 Pick. 141. *Stockbridge Iron Co.* v. *Hudson Iron Co.* 107 Mass. 290, 297–299. *Barker* v. *Comins*, 110 Mass. 477.

When the order directing issues has been in the second or in the third of these forms, stating the question to be tried, and not directing any further pleadings, the order has generally been treated as of itself framing a sufficient issue, and the case has been tried on the issue stated in the order. By the order of Mr. Justice Endicott, in the present case, the issue to be tried was not only directed, but framed, and no more formal issue was necessary.

3. There was no error in the ruling that the plaintiff was entitled to open and close before the jury.

The tendency of decision in this Commonwealth has been to simplify the practice in this respect, and to hold the plaintiff to be entitled to the opening and close in all cases. Upon trials of actions at law in this court on the general issue only, without any other plea or specification, the plaintiff always had the right to open and close. In early times, if a justification was pleaded, as well as the general issue, the two issues were tried separately, and on the issue of justification the defendant had the opening

and close. *Flagg* v. *Hobart*, Quincy, 332. *Morse* v. *Jewett*, b Dane Ab. 563, 564. And under the St. of 1792, *c.* 41, authorizing officers to plead the general issue and file a brief statement of any matter of defence, it was at one time a matter of doubt which party had the right to open and close. *Bangs* v. *Snow*, 1 Mass. 181. But afterwards the practice became settled to allow the plaintiff to open and close upon the whole case, whenever the general issue was pleaded, and to permit the defendant to open and close in those cases only in which by his plea he admitted the whole cause of action stated in the declaration, and undertook to remove or defeat it, as by a justification or a discharge. *Davis* v. *Mason*, 4 Pick. 156. *Ayer* v. *Austin*, 6 Pick. 225. Under the St. of 1836, *c.* 273, which allowed no other plea in bar than the general issue, the plaintiff was entitled to the opening and close, whatever specification of defence was filed. *Robinson* v. *Hitchcock*, 8 Met. 64. And since the new practice act has abolished the general issue in personal actions, and required an answer stating the defences intended to be relied on, the same rule has prevailed, even where the defendant admits the plaintiff's cause of action, and the only issue for the jury is upon a declaration in set-off. St. 1852, *c.* 312, §§ 12, 14, 18, 37. Gen. Sts. *c.* 129, §§ 15, 17, 20; *c.* 130, § 16. *Page* v. *Osgood*, 2 Gray, 260.

In probate appeals, upon the trial of the issue of the sanity of a testator, the executor who propounds the will for probate has always been held to have the right to open and close before the jury, whichever party is the appellant from the decree of the judge of probate, and independently of the form of the pleadings, or of the question of the burden of proof. The rule was as well established in times when by the approved practice the party contesting the will went forward in pleading; *Blaney* v. *Sargeant*, 1 Mass. 335; *Buckminster* v. *Perry*, 4 Mass. 593; and was held to have the burden of proving the insanity of the testator; *Brooks* v. *Barrett*, 7 Pick. 94, 98, 99; as it is to-day, when, in accordance with the earliest precedents, the executor pleads first, and it has been determined that the burden of proof rests upon him. *Phelps* v. *Hartwell*, 1 Mass. 71. *Crowninshield* v. *Crowninshield*, 2 Gray, 524, 527. *Briggs* v. *Titcomb*, above cited.

In cases of assessing damages for land taken under the right of eminent domain, the proceeding is not in the form of an action at law or of a suit in equity, and the owner of the land is really the plaintiff, and therefore entitled to open and close before any tribunal authorized to assess his damages, whether, as in the case of highways, the petition for a jury can be presented by him only, or, as in the case of railroads, may be presented by either party, or, as in the case of land taken for a post-office, must be presented by the agent of the government resisting his claim. Sts. 1870, c. 75; 1874, c. 372, § 67; 1873, c. 189, § 2. *Parks* v. *Boston*, 15 Pick. 198, 208. *Connecticut River Railroad* v. *Clapp*, 1 Cush. 559. *Winnisimmet Co.* v. *Grueby*, 111 Mass. 543. *Burt* v. *Wigglesworth*, 117 Mass. 302.

There is no reason why the general rule of practice in this Commonwealth, by which the plaintiff is entitled to the opening and close, should not be adhered to in equity, and there is nothing in the form of the order for an issue in the present case to take it out of the general rule. We are not required to decide what the effect might have been, if the order, as is often the case in England, had directed that the defendant in the cause should be plaintiff at the trial of the issue. *Hippesley* v. *Homer*, Turn. & Russ. 48, 50, note; *S. C.* Seton on Decrees, 984. *Frank* v. *Frank*, 2 Mood. & Rob. 314. *Browne* v. *McClintock*, L. R. 6 H. L. 434, 435.

4. The exception to the exclusion of the correspondence offered in evidence by the defendant cannot be sustained. Whether further evidence shall be received upon a point expressly admitted by the adverse party is wholly within the discretion of the judge presiding at the trial. In *Priest* v. *Groton*, 103 Mass. 530, and in *Commonwealth* v. *McCarthy*, 119 Mass. 354, cited by the defendant, the decision was that the admission of such evidence afforded no ground of exception. In *Fisher* v. *Mellen*, 103 Mass. 503, the evidence excluded upon such a point was precisely similar to that admitted in *Bannister* v. *Alderman*, 111 Mass. 261, and exceptions to its exclusion in the one case and to its admission in the other were alike overruled. See also *Cushing* v. *Billings*, 2 Cush. 158; *Blair* v. *Pelham*, 118 Mass. 420; *Commonwealth* v. *Allen*, ante, 46.

5. Upon the question of laches, we see no reason, upon a review of the whole testimony, to revise the decision of Mr. Justice Colt, who heard it from the lips of the witnesses. The fact that Jackson paid the plaintiff her dividends regularly, until within six months before the filing of the bill, was sufficient to put her off her guard, and to lull any suspicions created by his conduct in other respects.

*Exceptions overruled, and decree for the plaintiff.*