ARTHUR C. THOMSON & others, executors, *vs.* FREDERICK J. CARRUTH.

SAME *vs.* HELEN P. JAMESON & others.

SAME *vs.* MARIANNA J. MARTIN & others.

SAME *vs.* CLARENCE STETSON.

Suffolk.    March, 18, 19, 1914. — September 11, 1914.

Present: HAMMOND, LORING, SHELDON, & CROSBY, JJ.

*Will,* Execution.  *Supreme Judicial Court.  Practice, Civil,* Amendment, Right to prove admitted fact.  *Evidence,* Of intent.  *Witness,* Corroboration.

If a person, who intends to execute an instrument as his will, after placing his signature for the purpose of identification on the margin of each of the first four pages of the instrument, proceeds in the presence of three witnesses to sign his name on the margin of the fifth page, intending it as the signature of his will, and thereupon the three witnesses sign the attesting clause prepared for them, this is a valid execution and attestation of the will, the effect of which is not impaired by the testator afterwards recalling the witnesses and in their presence signing his name at the end of the *in testimonium* clause without any further signing by the witnesses, such later signature of the testator being no part of his will.

Where an appeal from a decree of the Probate Court admitting a will to probate was tried before a single justice of this court prior to the passage of St. 1913, c. 716, so that under the provision of § 6 of that statute an amendment to the petition for the proof of the will, for the purpose of correcting the record in a technical matter, could not be allowed by the full court, an order, which overruled exceptions to the rulings of the single justice, was made conditional upon the final allowance of the suggested amendment.

At the trial, upon an appeal from a decree of the Probate Court allowing a will, of the issue, "Was the alleged will now offered for probate executed according to law?" where the executor has introduced evidence that the alleged testator signed his name on the margin of the fifth page of the instrument, intending it as the signature of his will, he may introduce further evidence, for the purpose of showing that the alleged testator signed the instrument *animo testandi,* to the effect that immediately after the signing of the instrument on the margin of the fifth page an indorsement was made on a former will stating that it was cancelled.

Upon the trial of an issue of fact, an admission by one of the parties of a certain material fact does not deprive the other party of his right to prove that fact by affirmative evidence.

Where, at the trial of an appeal from a decree of the Probate Court allowing a will, the contestants have made an attempt to show that the testimony of a certain

witness for the executor differed from that which he had given in the Probate Court, the executor may be allowed to introduce evidence of the testimony given by the witness in the Probate Court for the purpose of showing that it was to the same effect as that given by him at the trial of the appeal.

LORING, J. These are four appeals taken by different next of kin from a decree of the Probate Court admitting to probate the will of Charles Herbert Pratt.

Two issues were framed by a single justice of this court * to be tried by a jury. These issues were: "First. Was the alleged will now offered for probate executed according to law?" "Second. Was the said Charles H. Pratt of sound and disposing mind and memory at the time of the execution of the said alleged will?"

When these two issues came on for trial, "the appellants agreed that the court might withdraw from the jury the second issue above noted, and, on the evidence, would be warranted in finding, and the appellants would not contest his finding, in the affirmative on said issue." Thereupon the single justice proceeded with the trial of the first issue, and the case is here on exceptions taken by the appellants in the course of that trial.

The facts which appeared in evidence attending the execution of the will were, in substance, as follows: The instrument in question had been drafted at Mr. Pratt's request, by Joseph Cavanagh, Esquire, a member of the bar, and a preliminary copy had been sent by Mr. Cavanagh to Mr. Pratt for his consideration. Mr. Pratt was, at that time, living at the Beaconsfield Hotel. Mr. Cavanagh, on the day in question, had called upon Mr. Pratt for another purpose. While Mr. Cavanagh was there, Mr. Pratt said that he would like to execute the will then, and, after it had been read in part by him and in part had been read to him by Mr. Cavanagh, a nurse who was in attendance upon him and two officers of the hotel were called in to act as attesting witnesses. Mr. Cavanagh was not present at the execution of the will, thinking that because he was named as executor it would be improper for him to be present at that time.

There was evidence that immediately before the attesting witnesses were called in, Mr. Cavanagh had suggested to Mr.

* *De Courcy,* J.

Pratt that he had "better sign before they come, on the margin of the pages, up to the last page." That Mr. Pratt proceeded to do and he had just finished or was finishing his signature on the fourth page when Mr. Cavanagh left the room, on the attesting witnesses coming in. When the attesting witnesses were present, Mr. Pratt started to write his name between the *in testimonium* and the attestation clauses. But Miss Burrows, the nurse, stopped him. There was conflict in the evidence as to what was then said by her.

Thereupon he did write his name in the margin of the fifth page and the attestation clause was subscribed by the witnesses. After this had taken place, Mr. Cavanagh returned to the room. There was evidence that Mr. Cavanagh then said to Mr. Pratt, "You have not signed the will at the foot of the will;" and thereupon Mr. Pratt said that Miss Burrows had told him that he [Cavanagh] had left directions that he was to sign in the margin, and that he did so because of those directions. Mr. Cavanagh said it was a mistake, and Mr. Pratt said, "Joe, this looks sloppy, don't it," to which he answered, "What do you mean?" and Mr. Pratt said, "To have my will go out to be seen by my friends in the Probate Court signed up here on the margin," and thereupon Mr. Pratt pulled the will toward him and took up a pen, or dipped it in the ink, and started to sign the will between the *in testimonium* and the attestation clauses. Thereupon Mr. Cavanagh stopped him and asked, "What are you going to do?" and Mr. Pratt said "I am going to put my name down here." To which Mr. Cavanagh said that he did not think he had better do that as long as he had signed it in the margin, and Mr. Pratt answered, "I don't want my will to go out looking that way, Joe." "Now," he said, "I am going to sign it there [indicating the place between the *in testimonium* and the attestation clauses] too." And thereupon Mr. Cavanagh said that he did not think that had better be done unless the witnesses were recalled, although it was not necessary since he had signed the will already, and thereupon a discussion ensued, Mr. Cavanagh urging Mr. Pratt to have a clean copy made and execute the will anew later on. This Mr. Pratt refused to do, saying that he wished to finish the matter that day, and Mr. Cavanagh said that if he insisted upon writing his name in the proper place that he would have the

attesting witnesses come back so that "those witnesses would be able to say how your name got at the bottom, as well as how it got on the side." Mr. Cavanagh then said to Mr. Pratt, "Before I do [call the witnesses back], do you tell me that you intend that [pointing to the signature on the margin] as your signature to this will?" to which he said "Yes," and thereupon the witnesses returned and Mr. Pratt wrote his name between the *in testimonium* and the attestation clauses, but the attesting witnesses did not again subscribe the will.

There was evidence upon which the jury could have found that what was said by Mr. Cavanagh when he returned to the room was, "Charlie, you haven't signed the will," and that the signature thereafter made by him was intended by him as the signature of his will and being after the attesting witnesses had subscribed their names the will was not duly attested, under the decision in *Chase* v. *Kittredge,* 11 Allen, 49.

That is to say, it was open to the jury to find that the signature on the margin of the fifth page was intended by Mr. Pratt as his signature to the will, but it was also open to them to find that the signature which was afterwards put between the *in testimonium* and the attestation clauses was intended by him as his signature to the will. Besides the attesting witnesses, three other witnesses were called by the executors, and no witnesses were called by the appellants.

The appellants requested the presiding justice to give nine rulings which are set forth in a note.\*

---

\* "1. On all the evidence in the case the jury should answer the question propounded in the negative.

"2. The burden of proof is upon the proponents of the will to show, by a fair preponderance of the evidence, that all the requirements of law were complied with in respect of the execution of the will; and if the jury are unconvinced or in doubt, they should answer the question submitted, No.

"3. Upon all the evidence in the case the testator did not intend his signature on the margin of any of the pages to be operative as the execution of the will, but that he intended to sign for such purpose, when he did sign, in the presence of the witnesses on their second appearance.

"4. If, upon the evidence, the jury believe that when the testator placed his signature on the margin of the fifth page of the will he did so either for the same purpose as that for which he had placed his signature on the margin of the previous pages or because Miss Burrows suggested it, still intending to

These rulings the justice refused to give in full.   Exceptions were taken by the appellants to this refusal of the justice.

The executors asked for two rulings which were, in substance, given by the justice, and an exception was taken by the appellants to that part of the charge in which the justice, in substance, gave these two rulings.

These rulings were as follows: "5.   If the will was validly executed on the margin, there is nothing shown in evidence which happened afterwards which affects that valid execution."   "7.   You are to assume, for the purposes of this case, that Mr. Pratt was of a sound mind and competent to execute his will."

The material part of the charge to the jury was as follows: "So you see we have come down now to the very narrow question. On the fifth page in the margin appears the name of Charles H. Pratt.   And the question, narrowed down for you to determine, is this: When Charles H. Pratt wrote his name there in the margin of this fifth page did he intend thereby to give this instrument

sign at the bottom of the will in execution thereof, as he subsequently did, the jury should answer the question propounded, No.

"5.   To answer the question propounded in the affirmative, the jury must find (a) that the testator signed on the margin for a purpose different from that for which he signed on the four preceding pages; (b) that he then intended not to sign at the bottom of the will, but to leave the space there provided for his signature unfilled.

"6.   If the jury find that when the testator signed on the margin of the pages which he signed when all the witnesses were present, he intended to sign at the end, in the usual place for a testator's signature, in token of execution of his will, but inadvertently forgot to sign, they should answer the proposed question, No.

"7.   If the testator intended to sign his will at the end in token of execution, but forgot to do so until the second appearance of all the witnesses, the question propounded should be answered, No.

"8.   The single question in the case for the jury to determine is whether the testator, when he placed his name on the margin of the fifth page, intended that as his final signature of the will in token of execution thereof, or whether he intended to sign at the end, in the usual place, in the place signified by the will as intended for his signature.   If the latter, the question must be answered, No.

"9.   If the signature by the testator at the end of the will was intended to be the operative signature to authenticate the will, the jury must find, under the uncontradicted evidence in the case, that the will was not executed according to law."

effect as his last will? If he did, then your answer to this question will be Yes. If he did not, your answer will be No; because it is upon that signature, admittedly made on the fifth page, witnessed by these three witnesses, that this whole case turns. Well, now you see that is even narrower than appears, because there is no dispute [but] that he signed his name there; there is no dispute but that the three witnesses attested this instrument after he had signed his name there. So that, really, we get now, I think, about as close and narrow as we can. The question comes down to one of intent. What was the intention on the part of Charles H. Pratt when he signed his name in the margin there of that fifth page and the witnesses attested that signature? Did he intend to place it there in order to have it operate as a signature, final signature, operative signature of his will — as *the* signature of his will; not for identification, or for any other purpose? If he did, that became his will at that moment, and your answer will be 'Yes.' And the burden is upon the executor to satisfy you by a fair preponderance of the evidence in this case that that was his intention, — when he signed his name on that page, to have that writing operate as a signature to his will, making it his will."

And again: "You notice that, although this whole transaction occurred in an hour or two of the afternoon of March 28, not only was the evidence put in here as to what occurred at the time Mr. Pratt signed this paper on the fifth margin, but also what occurred afterwards when the witnesses were recalled to the room, and what occurred with reference to writing on the copy of the old will, and the conversation that occurred, and the statements that were made by Mr. Pratt afterwards. These were admitted under what lawyers call the rule of *res gestae.* That is, where the acts that are done are so intimately connected that, although they may not be identical in time, they are so closely connected with the main thing of which we are inquiring as not only to throw light upon the main act, but to be essential in order to practically understand the main act with which they are intimately connected. So we have gone into, not only what took place during those five or ten minutes that the three witnesses were in the room, but also into what took place just before and just after. Why? Not because the issue is what occurred later; not because the

issue is as to the signing at the end of the will; but only so far as the transactions that occurred during this entire meeting on the afternoon of March 28 hark back and throw light on the intention of Charles H. Pratt, at the moment when he signed his name in the margin of the fifth page, and had that signature attested by the three witnesses. It is only so far as those statements and those acts that occurred later that afternoon, and before the will was finally taken and put in the safety deposit box and carried away; it is only so far as the transactions of that afternoon bear upon and help you to determine that narrow question of the intention of Mr. Pratt when he signed on the margin of the fifth page that they are of any consequence. So far as they do help you to determine what his intention was back at that time when he made his signature upon which this will stands or falls, and only so far as they help you determine his intention at that time, are they of consequence."

On the conclusion of the charge, when the appellants took an exception to that part of the charge which adopted, in substance, the fifth ruling asked for by the executors, the stenographer, at the request of the justice, read the part to which this exception was taken, and it was in these words: "For the purposes of this case it must appear that Mr. Pratt signed this instrument as his will and that that signature was attested by the three witnesses whose signatures appear on the will in writing. And if that once became an accomplished fact, that became the operative will of Mr. Pratt, and nothing done afterwards, so far as the testimony in this case shows, would nullify it."

At their argument in this court, the appellants have undertaken to support the first ruling asked for by them and refused by the justice on the ground that the instrument offered for probate included the signature of Mr. Pratt between the *in testimonium* and the attestation clauses, and that on the contention of the executors that signature was no part of Mr. Pratt's will. For, on the contention of the executors, Mr. Pratt's will was executed when he signed his name on the margin of the fifth page and the witnesses subscribed their names under the attestation clause on page six. On this assumption the signature of Mr. Pratt between the *in testimonium* and the attestation clauses (having been made subsequent to that) was no part of Mr. Pratt's will and should

not have been admitted to probate. It appears from the exceptions that no such contention was made at the trial. If it had been made, the petition of the executors for the allowance of Mr. Pratt's will could have been amended by leaving out the signature in question. It is manifest that the point is merely technical and that the case has been fairly tried on the merits. Under these circumstances an amendment to that effect may now be allowed. But this trial took place before the St. of 1913, c. 716,* and therefore the amendment cannot be allowed by this court.

The appellants' second contention is, that an incomplete instrument cannot be allowed as the will of the deceased, and the argument put forward is that Mr. Pratt could have signed his will "in a dozen different places" and that if he had intended to sign it in a dozen different places it was an incomplete instrument until the last of the dozen signatures had been put to the will. But this contention is without foundation. The deceased may, for the purposes of identification, write his name against each of the sheets. If he does so, those signatures are not the signature of the will which is required by R. L. c. 135, § 1. A testator cannot sign his will more than once. The only question in the case at bar was (as stated by the presiding justice) whether the signature on the margin of the fifth page was put there by Mr. Pratt as his signature to the will. There is nothing in the nineteen cases cited by the appellants in this connection which requires special notice.

The appellants' next contention is that the jury "should have been instructed to find whether the testator intended to complete the writing and signing of his will by the signature at the end or by the signature in the margin, and if by the signature at the end then the will was not executed according to law, and the issue should be answered in the negative." That is what the presiding justice told the jury, with this exception, that in dealing with the issue which was on trial, namely, "Was the alleged will now offered for probate executed according to law?" the presiding justice explained to the jury that what happened afterwards was of no consequence except so far as it threw light on the intent with which

---

* Section 6 of that statute is as follows: "This act shall take effect upon its passage, but shall not apply to cases pending before the full court or to verdicts rendered or findings made on or before the day of its passage."

the signature on the fifth page was made. That was a correct statement, made with accuracy. To have given the ruling asked for by the contestants would have impaired the accuracy of the statement and tended to mislead the jury.

We come now to the exceptions taken to the charge in so far as they adopted the fifth and seventh rulings asked for by the executors.

So far as that part of the charge is concerned, which in substance adopted the fifth request asked for by the executor, it has been disposed of by what has been said already.

The practical effect of the agreement made by the appellants when the second issue was withdrawn from the jury was what the judge told the jury, namely, that they were to assume for the purposes of this case that Mr. Pratt was of sound mind and competent to execute his will.

In making out the first issue, namely, "Was the alleged will now offered for probate executed according to law?" the burden was on the executor to show *inter alia* that the instrument was signed by the deceased *animo testandi*. It was competent for the executor to show that immediately after the execution of the instrument now in question an endorsement was made on a former will to the effect that it was cancelled. An exception was taken to the admission of this evidence, and the appellants now undertake to support that exception on the ground that the testamentary intent was not in dispute. But if the appellants had wished to take that position, they should have had the terms of the first issue amended. The general testamentary intent was in dispute so long as the first issue remained in the form in which it had been put. The issue to be tried was the issue raised by the pleadings. Admission of parties of the fact did not deprive the other party to the litigation of the right of proving the fact which was in issue under the pleadings. *Priest* v. *Groton,* 103 Mass. 530. *Commonwealth* v. *McCarthy,* 119 Mass. 354. *Commonwealth* v. *Costello,* 120 Mass. 358. *Dorr* v. *Tremont National Bank,* 128 Mass. 349. *Dawson* v. *Boston & Maine Railroad,* 156 Mass. 127. *Whiteside* v. *Lowney,* 171 Mass. 431. *Conant* v. *Evans,* 202 Mass. 34.

There was an attempt made by the appellants to show that Miss Burrows' testimony in the Probate Court was different from

that given by her on the stand.   For the purpose of showing that it was the same, the executors were allowed to put in evidence as to what she stated in the Probate Court, and an exception was taken by the appellants to the admission of that testimony.   We are not able to see why it was not competent for the executors to show that the testimony given by Miss Burrows in the Probate Court did not contradict the testimony given by her at the trial, but was, in fact, the same.

If within sixty days from the date of the rescript the petitioners shall make a motion to amend their petition by striking out from the instrument offered for probate as the last will of Charles H. Pratt the signature between the *in testimonium* and the attestation clauses, and a motion to that effect is finally allowed, the exceptions in this case will be overruled; otherwise, the exceptions will be sustained.   It is

*So ordered.*

*S. L. Whipple & W. H. Brown,* (*A. C. Vinton* with them,) for the appellants.

*C. F. Choate, Jr., & L. R. Chamberlin,* for the appellees, were not called upon.