RUTH PETERS PUTNAM & another *vs.* LUCY M. NEUBRAND & others.

Suffolk.    April 8, 1952. — November 24, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Will*, Execution, Signature, Validity, Revocation.

An instrument was legally executed as a will according to Massachusetts law where, some time after the alleged testator had signed it, he declared it to be his will in the presence of three persons and exhibited his signature thereon to them and they at his request, in his presence and in the presence of one another thereupon signed the instrument as witnesses. [456–457]

Respecting a purported will of two pages signed by the testator below the disposing clauses on the second page and also on the side margin of the first page, there was no merit in a contention that it could not be determined which signature was intended as the signature to the will; a finding was proper that the signature on the first page was written there only for the purpose of identification. [457]

When the testator in a will of two pages drew a line through all the disposing clauses on the second page and wrote "second page cancelled" thereon, simultaneously wrote and signed a third page marked "new page 2" whereon some of the gifts on the original second page were omitted for adequate reasons and the rest, including a residuary bequest to his university, were repeated and some new gifts were made, and enclosed the new page with the other two in an envelope marked as his "will," he intended to substitute the new page for the original second page and to cancel the original second page conditionally upon the new page being legally effective as part of the will; and inasmuch as the new page was legally ineffective for want of attestation it was proper to allow the first page and the original second page as his will.

PETITION, filed in the Probate Court for the county of Suffolk on June 16, 1950.

The case was heard by *Dillon,* J.

*Carlton W. Spencer,* (*Arthur Vitagliano* & *J. Sidney Stone* with him,) for the respondents Neubrand and others.

*Stuart C. Rand* & *G. d'Andelot Belin, Jr.,* (*J. Murray Howe, IV,* with them,) for the petitioners and others.

*Donald C. Starr,* for Murdock.

WILLIAMS, J. This is a petition for the probate of the will of one Francis O. Matthiessen who died in Boston on April 1, 1950. The judge approved and allowed for probate two sheets of paper, hereinafter described, which were presented for probate by Ruth Peters Putnam and Yale University, two legatees named in the will. In his decree he adjudged (*Olsen* v. *Olsen,* 294 Mass. 507, 508) that the will was legally executed, and that the testator was "at the time of making the same, of full age and sound mind." He appointed one of the proponents Ruth Peters Putnam administratrix with the will annexed and by a separate decree allowed the proponents "costs and expenses" in the sum of $6,000. The sister and the two brothers of the testator who are his only heirs and next of kin have appealed from both decrees.

The judge made no findings of material facts other than those stated in the decree allowing the will. The evidence is reported.

There was evidence that the testator was unmarried and lived at 87 Pinckney Street in Boston. He was a member of the class of 1923 of Yale University, and for several years immediately preceding his death was a professor at Harvard University. On July 8, 1947, he visited the offices of the New York Trust Company in New York city and expressed to certain officials of that company his desire to have executed as his will the two sheets of paper which are the subject of the decree for probate. These sheets, which will be referred to as pages 1 and 2, were typewritten and dated October 16, 1945. They contained clauses providing for specific legacies, a residuary bequest, and a designation of

New York Trust Company as executor. The testator had signed his name, "F. O. Matthiessen," below the disposing clauses on page 2. There were several interlineations in longhand made by him which were stated over his signature at the foot of page 2 to have been made on June 19, 1947. Matthiessen proffered these sheets of paper, which were stapled together, declared in the presence of three trust company officials, Camp, Hull, and Jefferis, that they were his last will and testament and asked the three men to be witnesses to the will. The testator's signature on page 2 was exhibited to the witnesses. Camp wrote on the back of page 2, "Mr. F. O. Matthiessen has declared this to be his last will and testament before the following witnesses, this 8th day of July 1947." Under this clause, the three witnesses signed their names and addresses. They observed the testator's signature and the interlineations in longhand which had been made. At the suggestion of Camp, the testator signed his name on the side margin of the first page. The witnesses all signed in the presence of each other and of the testator. As the testator was going to Europe he left the will temporarily with the trust company but later resumed possession of it.

On April 1, 1950, he engaged a room in an upper story of a Boston hotel, wrote a letter which he left on a table in the room, and then committed suicide by jumping from a window. In the letter he stated the names and addresses of persons whom he wished to have notified, and asked that they go to his apartment and "see that the letters on the desk are mailed." He also wrote, "My will is to be found on my desk in my apartment at 87 Pinckney St., Boston. Here are the keys." Later on the same day, one or more of the persons notified went to the apartment and there found on his desk a brown envelope on which was typed, "Last Will & Testament of Francis Otto Matthiessen dated 10/16/45." The words "dated 10/16/45" were crossed out and underneath was written in longhand "June 7, 1949." The typewritten words at the bottom of the envelope, "New York Trust Company named sole executor," were also

crossed out. In the envelope were the two sheets of the executed will with a diagonal line made by a pen drawn through all of the disposing clauses on the second page and the clause on that page designating the executor. The line was not drawn through the signature of the testator at the foot of the page. At the top of the page in the testator's handwriting appeared, "Second page cancelled, June 7, 1949." In the envelope with these two pages was a third typewritten page signed "F. O. Matthiessen" and dated in his handwriting June 7, 1949. At the top of this page there was typed "Will of F. O. Matthiessen — new page 2, June 7, 1949." The page contained provisions for certain bequests, some of them, including the residuary bequest, being substantially the same as those on page 2. Several of the bequests on page 2 were omitted on page 3 and the name of the designated executor was changed. This third page was signed but not attested.

In the absence of findings of material facts by the judge the entry of the decree implies the finding of every fact necessary to support it. *Glazier* v. *Everett*, 224 Mass. 184, 185–186. *Durfee* v. *Durfee*, 293 Mass. 472, 477. *Berry* v. *Kyes*, 304 Mass. 56, 57–58. *Marshall* v. *Landau*, 308 Mass. 239, 241. As the practice in probate appeals is according to equity so far as practicable and applicable, *Churchill* v. *Churchill*, 239 Mass. 443; *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 144; *Mackintosh, petitioner*, 246 Mass. 482; *Boston Safe Deposit & Trust Co.* v. *Wickham*, 254 Mass. 471, 473, the appeals open for our consideration all questions of fact, law and discretion. *Trade Mutual Liability Ins. Co.* v. *Peters*, 291 Mass. 79, 83–84.

We observe nothing in the evidence sufficient to impugn the finding of the judge that the two sheets of paper which were admitted to probate were legally executed as the will of the decedent. His signature to the will was exhibited to the three men who were asked by him to witness his will and the three signed as witnesses in his presence and in the presence of each other. The will was properly executed according to the laws both of New York (see N. Y. Consol.

Laws 1930, c. 13, § 21; *Baskin* v. *Baskin,* 36 N. Y. 416; *Matter of Kellum,* 52 N. Y. 517; *Matter of Dodds,* 294 N. Y. 706) and of this Commonwealth. G. L. (Ter. Ed.) c. 191, § 1. *Dewey* v. *Dewey,* 1 Met. 349. *Ela* v. *Edwards,* 16 Gray, 91. *Nunn* v. *Ehlert,* 218 Mass. 471, 475. *Barber* v. *Henderson,* 304 Mass. 3.

"A last will and testament executed in the mode prescribed by the law, either of the place where the will is executed or of the testator's domicile, shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of this commonwealth; provided, that such last will and testament is in writing and subscribed by the testator" (G. L. [Ter. Ed.] c. 191, § 5). There seems to be no question of the testator's domicil being in this Commonwealth.

The contention by the contestants that because the testator wrote his name in the margin of the first page it cannot be determined whether that signature or the one under the disposing clauses on the second page was intended as the signature to the will is without merit. It could properly be found by the judge and we find that the signature in the margin was, at the suggestion of Camp, only inscribed for purposes of identification. See *Thomson* v. *Carruth,* 218 Mass. 524, 531.

The principal matter for decision is the effect of the third page on the purported revocation of the clauses on page 2. By G. L. (Ter. Ed.) c. 191, § 8, it is provided in part that "No will shall be revoked except by burning, tearing, cancelling or obliterating it with the intention of revoking it . . . ." Cancellation is effected by some defacement or mutilation of the words of the will. *Worcester Bank & Trust Co.* v. *Ellis,* 292 Mass. 88, 91–92. A part of a will may be cancelled leaving the rest in full force. *Bigelow* v. *Gillott,* 123 Mass. 102. The testator defaced the clauses on the second page by drawing a line through them and declared his intent by writing on the margin of the page "Second page cancelled, June 7, 1949." In the absence of this third or substitute page we think it clear that a revoca-

tion of those clauses would have been accomplished by cancellation.

The drafting of the substitute or third page which could be found to have been typed by the testator substantially at the time of the cancellation and then placed in an envelope with pages 1 and 2 raises the question whether the cancellation was intended to be unconditional or dependent on the testamentary effectiveness of the clauses on the substituted third page. In the leading case of *Sanderson* v. *Norcross*, 242 Mass. 43, 45, we said, "The doctrine is widely established that a revocation of a valid will, which is so intimately connected with the making of another will as to show a clear intent that the revocation of the old is made conditional upon the validity of the new, fails to become operative if the new will is void as a testamentary disposition for want of proper execution," and in *Schneider* v. *Harrington*, 320 Mass. 723, 725–726, "where a testator cancels or obliterates portions of his will in order to substitute different provisions, and in such a way as to show a clear intent that the revocation is conditional on the validity of the substitution, and the substitution fails for want of proper authentication, the will stands as originally drawn." See also *Walter* v. *Walter*, 301 Mass. 289; *Porter* v. *Ballou*, 303 Mass. 234. For decisions in other jurisdictions which are substantially in accord see *Strong's Appeal*, 79 Conn. 123; *In the matter of Penniman*, 20 Minn. 245; *Varnon* v. *Varnon*, 67 Mo. App. 534; *In the matter of Macomber*, 274 App. Div. (N. Y.) 724; and the cases cited in *Schneider* v. *Harrington, supra*, at page 726.

In the instant case there was the following persuasive evidence of the intent of the testator to make page 3 a part of his will in substitution for the cancelled page 2. He signed page 3 and typed over his signature at the top of the page "Will of F. O. Matthiessen—new page 2, June 7, 1949." He filed pages 1, 2 and 3 in one envelope labeled "Last Will & Testament of Francis Otto Matthiessen dated June 7, 1949." In the letter which he left in the hotel room he wrote, obviously referring to this envelope, "My will is to

be found on my desk in my apartment . . . ." On page 3 there appears a bequest to Monthly Review, a magazine of which his intimate friend Paul Sweezy was one of the editors, and on Matthiessen's desk there was found a letter to Sweezy, which was one of those directed to be mailed, in which Matthiessen wrote "I've willed M R [meaning Monthly Review] $5,000."

In our opinion the testator intended to substitute page 3 for page 2 and make the substituted page a part of his will. Although believing that he had effected this result, it appears that he was in error because of the failure to have the substituted page attested. The judge must have found, as we think he should have, that the testator's intent to cancel was conditioned on page 3 becoming legally effective as a part of the will, and on failure of the condition the cancellation was not operative.

We have considered the contention of the contestants that the provisions of the cancelled page are so materially different from those of the page to be substituted that it cannot be found the cancellation was intended to be conditional. A comparison of the provisions of pages 2 and 3 shows that six bequests totaling $6,000 which appeared on page 2 were omitted on page 3. They were of $1,000 each to the testator's sister Lucy, to his brother Dwight, to his friend Harry McCaffery, to International Labor Defense of New York, to the Samuel Adams School for Social Studies, Boston, and to the Massachusetts Progressive Citizens of America. There was evidence tending to show that the reasons for omitting these bequests on page 3 were that the sister and brother had become entitled to benefits from a trust fund left by the testator's father who had died since page 2 was executed; that McCaffery was dead; that International Labor Defense of New York and the Samuel Adams School for Social Studies had to the knowledge of the testator been listed on a so called subversive list promulgated by the Department of Justice; and that the Massachusetts Progressive Citizens of America had been merged in the Progressive Party.

Legacies of $5,000 to his friend Laurette Potts Murdock, of $1,000 to his friend Jerome Mellquist, of $1,000 to the Russell Trust Association of New Haven, of $1,000 to Highlander Folk School, and of the residue of the estate to the Library of Yale University appear on both pages 2 and 3.

Legacies of $5,000 to his god-daughter Emily Knapp Pitkin, of $1,000 to his friend Howard Lathrop, and of $5,000 to Monthly Review are provided on page 3 and not on page 2.

On page 3 Merchants National Bank of Boston is designated as executor instead of New York Trust Company.

The changes made by the testator on page 3 and the reasons suggested for the omission on that page of certain legacies previously granted do not convince us that if he had been aware of the invalidity of page 3 as part of his will he would have intended that his cancellation of page 2 be absolute. Although the value of the estate does not appear in evidence, it may be inferred from the entire record that it was of substantial amount and that the bequest of the residue to Yale University was of sentimental and perhaps controlling importance to the testator. On both pages 2 and 3 he wrote, "Having given the bulk of my career to Harvard, I should like to leave whatever little money I have, as a token of gratitude, to my own Alma Mater." It is not reasonable to believe that the testator would have been content with an intestacy as to the residue of his estate which would have resulted if page 2 was unconditionally cancelled. In our opinion the cancellation of page 2 was conditional and the judge was right in allowing pages 1 and 2 to be probated.

The allowance of costs and expenses to the proponents was within the judge's discretion. The amount of the award shows no abuse of that discretion.

*Decrees affirmed.*