M. James Zelman, trustee in bankruptcy, vs. Bernard J. Killion & others (and two companion cases[1]).

Suffolk.    March 4, 1958. — June 9, 1958.

Present: Wilkins, C.J., Spalding, Williams, Counihan, & Whittemore, JJ.

*Mortgage*, Of real estate: validity, consideration. *Executor and Administrator*, Real estate of decedent. *Real Property*, Decedent's real estate. *Res Judicata*. *Jurisdiction*, Declination of jurisdiction, Matter pending in bankruptcy court.

A devisee has a title to his testator's real estate which, although subject to being divested in certain circumstances, enables him to give a mortgage of the real estate. [671]

Evidence in a suit in equity required a finding that a junior mortgage, given by residuary devisees of real estate formerly of their testator to replace a junior mortgage by the testator in the same amount which was discharged in order to permit the giving of a new first mortgage, was given in consideration of such discharge. [671–672]

Dismissal by a judge of a Probate Court, without making any findings of facts or giving any reasons for his action, of a petition brought by a mortgagee solely to reform a note and real estate mortgage given to him by a devisee under a will by adding to the instruments the name of the executor of the will as an obligor and grantor, to which petition the trustee in bankruptcy of the devisee had filed an answer alleging that the instruments were invalid for want of consideration, did not make the issue of want of consideration res judicata in a subsequent suit in equity by the trustee in bankruptcy against the mortgagee raising that issue. [673–674]

In a suit in equity by the trustee in bankruptcy of a devisee under a will involving the validity of a mortgage given by the devisee of real estate formerly of his testator and a counterclaim by the mortgagee against the trustee for rents collected by the trustee while in possession of the real estate following the mortgagee's possession after entry to foreclose the mortgage, there was no reversible error on the part of the trial judge in declining jurisdiction to adjudicate the counterclaim where it appeared that the mortgagee had filed in the bankruptcy court a petition to reclaim such rents from the trustee and that the referee in

---

[1] The companion cases are by M. James Zelman, trustee in bankruptcy of the estate of James A. Foley, and by George M. Abagis, special administrator of the estate of William J. Foley, against the same defendants.

bankruptcy had deferred taking action on such petition until the validity of the mortgage should have been determined in the equity suit but had intended to retain jurisdiction to act then upon such petition. [675–676]

THREE BILLS IN EQUITY, filed in the Superior Court on November 9, 1955.

The suits were heard together by *O'Connell, J.*, who entered final decrees from which the plaintiffs and trustees under the will of Irene A. Hyde, interveners, appealed.

*Stuart Macmillan,* (*William A. King* with him,) for the interveners.

*Benjamin Goldman,* (*M. James Zelman & George M. Abagis* with him,) for the plaintiffs.

COUNIHAN, J. These are three suits in equity brought in the Superior Court which were tried together. M. James Zelman, trustee in bankruptcy of the estate of Margaret V. Foley and also trustee in bankruptcy of the estate of James A. Foley, both of whom were adjudicated bankrupts, are the plaintiffs in the first two suits. George M. Abagis, special administrator of the estate of William J. Foley, is the plaintiff in the third suit. The original defendant in each suit was Bernard J. Killion (hereinafter sometimes referred to as the defendant), individually and as trustee under the will of Irene A. Hyde. He was the executor under the will of Irene A. Hyde and also the executor under the will of William J. Foley who died on August 4, 1949, and in whose will Margaret V. Foley and James A. Foley were named as residuary devisees and legatees. He was also counsel for the latter.

All the plaintiffs seek to recover rents collected by the defendant after he made an entry to foreclose a mortgage, for breach of condition thereof, on the Waldo Garage property in Brookline owned in his lifetime by William J. Foley. This was a second mortgage dated September 15, 1950, from James A. Foley and Margaret V. Foley, residuary devisees under the will of William J. Foley, in the sum of $50,000 to the defendant as trustee under the will of Irene A. Hyde.

The validity of this mortgage presents the real issue in these suits. The plaintiffs contend that this mortgage is invalid for want of consideration so that the defendant was not entitled to make entry for the purpose of foreclosing it nor to collect any rents under said entry.

The plaintiffs also allege that the defendant was guilty of waste and mismanagement and they seek to reach and apply in satisfaction of their claims any money which may be due the defendant for services from the Hyde estate.

By amendment they also seek to reach and apply in satisfaction of their claims a note and a mortgage on real estate from William M. Kleinberg to Dorothy A. Killion, the late wife of the defendant.

Before these suits came to trial Mr. Killion resigned as trustee under the will of Irene A. Hyde and three new trustees were named to succeed him as trustees under the Hyde will.[1] He also resigned as executor under the will of William J. Foley on October 13, 1955.

The new trustees were allowed to intervene as parties defendant in these suits and in substance they set up that the mortgage dated September 15, 1950, in the sum of $50,000 is a valid mortgage and they seek to have the validity of that mortgage adjudicated and established. By way of counterclaim they also seek to have Mr. Zelman account to them for money he collected as rent after he assumed possession of the real estate as trustee in bankruptcy until he abandoned it by leave of the bankruptcy court.

The evidence is reported and the judge filed a "memorandum of findings and rulings." He caused to be entered final decrees adjudging that the mortgage dated September 15, 1950, for $50,000 and the mortgage note were "invalid and without consideration," ordering the intervening new trustees "to surrender the said note and mortgage to the plaintiff for cancellation, and to execute a discharge of the same," dismissing the bills "otherwise," and dismissing the inter-

---

[1] Robert H. Davison, Declan W. Corcoran and Edmund M. Murray.

vening petitions of the new trustees and their counterclaims. The plaintiffs and the intervening trustees appealed from the final decrees. We are of opinion that there was error in the final decrees and in some of the findings and rulings leading up to them.

"An appeal in equity with a report of the evidence and a report of the material facts opens up for our decision all questions of law, fact, and discretion. It is our duty to examine the evidence. We can find facts not expressly found by the judge and we can reverse the conclusion reached by him if found to be tainted by some error of law, but the findings of fact made by him are to stand unless we are satisfied that they are plainly wrong." *Willett* v. *Willett,* 333 Mass. 323, 324.

1. We deal first with the validity of the mortgage of $50,000 dated September 15, 1950, which as we have said is the crucial issue before us. In order to determine the validity of that mortgage, we deem it appropriate to recite the circumstances under which it was given.

William J. Foley, the then owner of the so called Waldo Garage property, on January 5, 1940, gave a mortgage on it to the Connecticut Mutual Life Insurance Company for $170,000. On January 12, 1940, he gave a second mortgage to James A. Foley, his brother, for $100,000. This mortgage was used as collateral to borrow $50,000 from Clarence E. Hyde and it was assigned on August 12, 1941, to Clarence E. Hyde for $50,000 as evidenced by a check of Hyde in that amount to Mr. Killion as attorney which was indorsed by Mr. Killion as attorney to James A. Foley who subsequently indorsed it. It was cashed by William J. Foley.

On June 28, 1945, William J. Foley gave a new first mortgage to the Phoenix Mutual Life Insurance Company, hereinafter called Phoenix, for $325,000 and the Connecticut Mutual Life mortgage was discharged. On the same day he gave a second mortgage for $50,000 to Clarence E. Hyde and the mortgage for $100,000 held by Clarence E. Hyde by assignment was discharged. This new second mortgage

to Clarence E. Hyde dated June 28, 1945, for $50,000 was assigned by him on November 9, 1945, to the estate of Irene A. Hyde. This is evidenced by a check of Mr. Killion, executor under the will of Irene A. Hyde, to Clarence E. Hyde for $50,000 and dated November 9, 1945.

On March 22, 1948, William J. Foley gave a new first mortgage to Phoenix for $400,000 and at about the same time the mortgage for $325,000 to Phoenix was discharged. On the same day he gave a new second mortgage for $50,000 to Mr. Killion as executor under the will of Irene A. Hyde, and the mortgage to Clarence E. Hyde for $50,000 then held by assignment by the estate of Irene A. Hyde was discharged. On May 26, 1948, he gave a third mortgage for $300,000 to James A. Foley which he (William J. Foley) used as security to borrow $100,000 from a finance company. On October 27, 1948, the second mortage to the Hyde estate was discharged, thus making the $300,000 mortgage to James A. Foley a second mortgage. On October 27, 1948, he gave a new mortgage for $50,000 to the Hyde estate which became a third mortgage.

After the death of William J. Foley, Mr. Killion, executor under the William J. Foley will, by virtue of a license from the Probate Court, and James A. Foley and Margaret V. Foley gave a mortgage of $475,000 dated September 7, 1950, to the Home Life Insurance Company. The previous mortgages to Phoenix, James A. Foley and the Hyde estate were all discharged. On September 15, 1950, James A. Foley and Margaret V. Foley, residuary devisees under the will of William J. Foley, gave a mortgage for $50,000 to Mr. Killion, trustee under the will of Irene A. Hyde. This is the mortgage which is in controversy.

On February 26, 1954, Mr. James F. Connolly under a power of attorney from Mr. Killion made an entry for the purpose of foreclosing this latter mortgage and he collected rents amounting to approximately $17,458.21 until Mr. Zelman took over possession of this real estate on March 25, 1955, when he was appointed trustee in bankruptcy of the estates of James A. Foley and Margaret V. Foley.

In his "memorandum of findings and rulings" the judge said, "I find and rule" that the mortgage dated September 15, 1950, for $50,000 was not a valid encumbrance on the property; that "neither of the aforesaid legatees [*sic*] [James A. Foley and Margaret V. Foley] had any title they could convey"; and that neither of them received any money or other consideration for this mortgage.

We think that the reasons given by the judge for ruling that this mortgage is invalid were incorrect as matter of law. "While the estate devised . . . was subject to the payment of the testator's debts if it should be needed to satisfy them . . . still the . . . [devisee's] title under the will was not conditional upon the payment of such debts; her title was absolute, although it might be divested if proper proceedings were taken by creditors to enforce their demands. . . . However that may be, the defendant was entitled to convey by mortgage whatever title or interest she had in the real estate . . .." *Great Barrington Sav. Bank* v. *Brown*, 239 Mass. 546, 548. See 1 Newhall, Settlement of Estates (4th ed.) page 285; 3 Am. Law of Property, 572, 696, 706. This error permeates other findings of the judge upon which the plaintiffs rely.

The judge found that "the inference is warranted that he [Mr. Killion] calculated and intended this particular mortgage would act as a so called replacement for the $50,000 second mortgage" dated October 27, 1948, given by William J. Foley to Mr. Killion as executor of the Irene A. Hyde estate. He found also that neither of the mortgagors received any money or other consideration for the mortgage and that "the execution by the residuary legatees of the mortgage for $50,000 . . . did not become a replacement in the chain of mortgages beginning with the purchase of the $100,000 mortgage for $50,000 by Clarence E. Hyde." We think this finding is not supported by the evidence. The evidence shows that Mr. Killion was acting for the Hyde interests, as executor and attorney for the Foley estate, and as attorney for James A. Foley and Margaret V. Foley. In the September, 1950, transaction, as the judge found,

"He was acting to advance and protect the interests of the Foley estate." As residuary devisees and legatees the mortgagors were interested in the estate. The increase in the prior mortgage to $475,000 benefited the estate. It was authorized by the Probate Court on a petition, assented to by all legatees including James A. and Margaret V. Foley, which recited that it was to pay "debts, estate taxes, expenses of administration and legacies." The increase in the prior mortgage could not have been accomplished without subordinating or discharging the existing $50,000 mortgage. It was implicit in the discharge of that mortgage by the Hyde trust that consideration would be given for the discharge. Mr. Killion's actions in getting the Foleys to sign the mortgage on September 15 and recording it indicate that the new mortgage was the understood consideration. No other consideration appears. The finding of the judge that Mr. Killion intended it as a replacement mortgage was clearly justified. The finding is required, we think, that the new mortgage was given in consideration of the discharge of the existing $50,000 mortgage. The evidence relied on by the plaintiffs as showing otherwise is not, we think, significant. That Mr. Killion may have told James A. Foley that he should sign the mortgage "as it would protect the William J. Foley estate against suits" does not negative the obligation stemming from the discharge of the prior mortgage to give consideration therefor. It is manifest that the Foleys were trusting Mr. Killion to do what was required, and in the circumstances we must look at what was done. The history of the several mortgages which were given by William J. Foley on this real estate demonstrates that whenever a new first mortgage was given, the holders of subordinate mortgages were required to discharge such subordinate mortgages and, after a new first mortgage was given, to replace the subordinate mortgages with other subordinate mortgages which would be subject to the new first mortgage. The consideration for the new subordinate mortgages was in each case the surrender and discharge of the preëxisting subordinate mortgages.

It is not significant that there is no evidence of an oral agreement between the Foleys, represented by Mr. Killion, and the Hyde trust, also represented by him. There were, we assume, conflicts of interest among those represented by Mr. Killion, but we do not think that the mortgage of September 15, 1950, would be invalid because of failure of Mr. Killion in an obligation owed to the mortgagors. It is important to note that the judge expressly found that there was no evidence that Mr. Killion, as an individual, profited by any of the mortgage transactions or by any of the rents collected.

We conclude therefore that the mortgage in issue is a valid mortgage. This conclusion determines that Mr. Killion and his succeeding trustees of the Hyde estate are entitled to retain the rents collected by Mr. Connolly under the power of attorney from Mr. Killion, trustee of the Hyde estate.

2. At the trial of the present suits the plaintiffs sought to introduce a transcript of the evidence in certain proceedings in the Norfolk Probate Court. Those proceedings arose out of a petition filed on May 31, 1955, by Mr. Killion as trustee under the will of Irene A. Hyde to reform the note and mortgage in controversy by adding to the note and mortgage the name of Mr. Killion, executor under the will of William J. Foley, as a grantor and obligor. Mr. Zelman as trustee in bankruptcy filed an answer alleging that the note and mortgage were invalid for want of consideration and further that the note and mortgage had been paid. On September 27, 1955, the judge ordered that "the within petition in equity to reform be and the same hereby is dismissed." The plaintiffs excepted to the refusal of the judge to permit this transcript to be introduced at the trial of the present suits.

The plaintiffs contend that the refusal of the judge to admit this transcript was error. They argue that the action of the judge of probate in dismissing the petition to reform is an adjudication that the note and mortgage were without consideration and that they had been paid. Such an ad-

judication made res judicata, they assert, the question of want of consideration in the cases before us. We do not agree.

The judge of probate made no findings of facts. He simply dismissed the petition to reform and gave no reason for such action. If he took such action for any reason, other than want of consideration and payment, his action would not make res judicata the issues which were raised in the cases before us. *Burlen* v. *Shannon*, 99 Mass. 200, 202. *Olsen* v. *Olsen*, 294 Mass. 507, 509, and cases cited. *Whittemore* v. *Selectmen of Falmouth*, 304 Mass. 72, 74. *Gulesian* v. *Richardson*, 306 Mass. 184, 186–187. We think that the probate judge might well have dismissed the petition to reform on the ground that there was no need of it because of what is said in *Great Barrington Sav. Bank* v. *Brown*, 239 Mass. 546, 548, which we have already referred to. Furthermore, we think that the petition before the probate judge was only a petition to reform the note and mortgage in the manner we have described. The answer of the trustee in bankruptcy was not germane to any issue raised by the petition. The cases relied upon by the plaintiffs in their brief are not controlling because they involve different circumstances. There was no error in the exclusion of the transcript of the evidence in the Probate Court.

3. The plaintiffs also objected to the admission of certain ledger sheets of the Hyde estate from which one Cooney testified. He is a public accountant, called as a witness by the interveners. There was no dispute about the rents collected by Mr. Killion under the entry he made for the purpose of foreclosure and, in view of what we have said about the subordinate mortgages being replacements of earlier mortgages, we assume without deciding that, if there was any error in admitting the ledger sheets, it was harmless error.

4. There is no merit to the contention of the plaintiffs that there was a mistake in the power of attorney given by Mr. Killion to Mr. Connolly to make entry to foreclose the controversial mortgage, by Mr. Killion's signing as executor

under the will of Irene A. Hyde when in fact he was the mortgagee as trustee under the will of Irene A. Hyde. In any event this mistake was rectified by Mr. Connolly's turning over all rents collected to Mr. Killion as trustee under said will.

The holding by us that the plaintiffs are not entitled to recover any rents from the defendant disposes of the claims that they are entitled to reach and apply any money due Mr. Killion from the Hyde estate, and the Kleinberg mortgage, as well as any claim of waste or mismanagement in the collection of rentals.

5. There remains to be considered only the counterclaim of the intervening new trustees of the Hyde estate to recover from the trustee in bankruptcy of each bankrupt the money collected by the trustee in bankruptcy from the time he took possession until he abandoned the real estate by leave of the bankruptcy court. It may be of importance to note that the first mortgage to the Home Life Insurance Company was foreclosed on October 17, 1955.

It appears from the exhibits that Mr. Killion as trustee of the Hyde estate on July 13, 1955, filed in the bankruptcy court in each of the bankrupts' estates a petition for reclamation of these rents. The referee in bankruptcy subsequently filed a memorandum in which he said he was taking no action on the petitions for reclamation because the trustee in bankruptcy had been authorized to institute a suit in the courts of our Commonwealth to show that the mortgage which is the subject of this controversy was lacking in consideration. He further said that if the trustee in bankruptcy should prevail then the question of the rents collected by him becomes moot. We infer from that memorandum that the referee intended to retain jurisdiction to act upon the petitions for reclamation when the validity of that mortgage should be determined.

In his "findings and rulings" the judge ruled that the question of the disposition of the rent collected by the trustee in bankruptcy should be determined by the bankruptcy court. While we think that the judge could have assumed

jurisdiction and determined this question because it was raised in the intervening petitions of the new trustees of the Hyde estate by way of counterclaim, we think there was no reversible error in the action of the judge in declining to do so.

6. The final decrees are reversed and these suits must be remanded to the Superior Court for the entry of decrees declaring that the mortgage dated September 15, 1950, is a valid one, and dismissing the plaintiffs' bills. The decrees should further provide that the counterclaims of the intervening trustees for money collected by Mr. Zelman as rent be dismissed without prejudice to further proceedings in the bankruptcy court on the reclamation petitions pending therein. The intervening trustees under the will of Irene A. Hyde are to have costs of the appeals.

*So ordered.*