Mary E. Flynn & another *vs.* Margaret J. Barrington.

Essex.   February 7, 1961. — March 7, 1961.

Present: Wilkins, C.J., Whittemore, Cutter, Kirk, & Spiegel, JJ.

*Will,* Alteration.   *Evidence,* Presumptions and burden of proof.   *Probate Court,* Rehearing.

This court determined from the face of a will offered for probate that there had been an alteration at some time of the figures used in stating a large bequest.   [191–192]

The proponent of a will has the burden of proving that a demonstrated alteration therein was made before its execution.   [192]

Upon an appeal from a decree of a Probate Court admitting to probate a will in which there had been an alteration, not proved by the proponent to have been made before its execution, in the figures used in stating a large bequest to the testator's wife, the decree was reversed and, in the circumstances, the case was remanded to the Probate Court for further hearing as to the alteration, the original amount of such bequest, and other relevant matters.   [193]

Petition filed in the Probate Court for the county of Essex on October 29, 1959, for proof of a will.

The case was heard by *Phelan,* J.

*Philip Strome,* (*Albert R. Pitcoff* with him,) for the contestant.

*Raymond M. Sullivan,* (*Robert V. O'Sullivan* with him,) for the proponents.

Cutter, J.   The proponents offered an instrument for probate as the will of Joseph A. Flynn, who died October 15, 1959.   One of the next of kin (the contestant) offered

evidence tending to show an alteration in the alleged will. The will was admitted to probate and the contestant has appealed. The probate judge has filed a report of material facts. The evidence is reported. The facts are stated on the basis of the judge's findings except as otherwise indicated.

The instrument was drawn by Flynn sometime prior to December 24, 1958. On that evening one Wefers, his wife, and his sister-in-law were guests of Mr. and Mrs. Flynn at dinner. After dinner, Flynn asked the three guests "to step into the living room as he wanted them to witness his signature on his will. Mrs. Flynn remained in the kitchen." Flynn "folded the instrument so that the attestation clause was uppermost, sat down at a desk . . . and signed" the instrument in the presence of the three guests, who in turn signed as witnesses in his presence and the presence of each other. The "will . . . was in the handwriting of the decedent who used two kinds of ink or pens in the drawing and execution."

The original document was produced at the arguments in this court and was examined. It is on a stationer's form, containing in printed words introductory language and usual in testimonium and attestation provisions. The remaining provisions are in handwriting. The estate is shown by the docket entries to consist of $6,000 of real estate and in excess of $450,000 of personal estate. The will first gives to five persons pecuniary legacies, no one of which exceeded $5,000. It gives to a church $1,000. It leaves to his wife an "automobile, all my house-hold furniture, equipment, and articles at 45 Dartmouth St. Insurance policies and Bank deposits. *Also $160,000.00/100 in cash or stocks her choosing.* The income from the remaining estate shared equally with My wife Mary . . . and My Neice [*sic*] Anna Flynn Walsh" (emphasis supplied). The widow and niece were named executrices. Then followed (a) a provision giving $1 each to "Neices [*sic*], Nephews, Grand Neices [*sic*], Grand Nephews"; (b) a designation of an attorney to advise the executrices; (c)

six more small pecuniary gifts; (d) a provision forfeiting the bequests of contestants; (e) a provision for the care of Flynn's grave; and (f) a provision "In case of death of those mentioned, the amounts mentioned will revert to residue of the Estate."

The contestant's claim is that examination of the instrument shows that the figure "$160,000" in the provision for the widow has been altered at some time. Although the document contains ten other instances in which the amount of a legacy is expressed in arabic figures preceded by a dollar sign, in each such instance the dollar sign has been well separated from the first figure. The initial digit, however, of the "$160,000" is crowded in close after the dollar sign. There are signs that the "6" was produced by overwriting some other figure, and the zero immediately following the "6" appears to have been overwritten. No comma separates the digits representing thousands from those representing hundreds in any other place in the will. A comma appears after the digits "160." In these digits, the "1" is heavier and less freely drawn than the same figure in six other places in the will. From examination of the document alone and disregarding the testimony of the handwriting expert, we conclude that the document was altered at some time in the respects noted.

A handwriting expert, called by the contestant, testified that the document was "written in at least three pens or at least three inks"; that the "1" in "160,000" was "inserted with another pen" after the 60,000 was written; that the "6" "has been written over"; and that she had been unable to determine what was under the "6." She was also unable to say that the body of the will was in Flynn's handwriting because she had no sufficient samples of that.

There was no testimony which had any tendency to show that the figure read "$160,000" at the time of the execution of the will, for none of the witnesses of the will saw this portion of the document, when it was executed. It was folded. One witness testified the will "looks — that is Mr. Flynn's writing to my knowledge." No witness testified

about what happened to the document after it was executed, or where it was found, or in whose custody it was at any time between December 24, 1958, and the date when it was filed with the Probate Court. Neither proponent testified.

1. The scope of our review where the evidence is reported is that stated in *Shattuck* v. *Wood Memorial Home, Inc.* 319 Mass. 444, 445, *Zelman* v. *Killion,* 337 Mass. 666, 669, and *Mulcahy* v. *Boynton,* 341 Mass. 171, 177. Cf. *Edelstein* v. *Old Colony Trust Co.* 336 Mass. 659, 663–664. It is open to us to find facts contrary to the probate judge's findings. If the testimony of the handwriting expert is wholly disregarded we can determine from the face of the will itself whether there was an alteration as well as the probate judge. See *Skil Corp.* v. *Barnet,* 337 Mass. 485, 488. We conclude from examination of the document alone that the figures "$160,000.00/100" were altered at some time.

2. Once it is plain that there are alterations in an instrument offered for probate, the proponents have the burden of proving that these were made prior to the execution of the will. See *O'Connell* v. *Dow,* 182 Mass. 541, 552. See also *Ely* v. *Ely,* 6 Gray, 439, 441 (mortgage); *Hogan* v. *Whittemore,* 278 Mass. 573, 576. No presumption either helps or embarrasses the proponents. See *Wilton* v. *Humphreys,* 176 Mass. 253, 257 (time of alteration to be established by evidence, which "may be found in the instrument itself, or may come from outside of it"); annotation 34 A. L. R. 2d 619, 630–647. See also *Barletta* v. *New York, N. H. & H. R.R.* 297 Mass. 275, 277–278; *Mindell* v. *Goldman,* 309 Mass. 472, 475–476; Newhall, Settlement of Estates (4th ed.) § 40, p. 144; § 341; Wigmore, Evidence (3d ed.) § 2525. Alterations do not necessarily make the will void and may be disregarded. See *Wheeler* v. *Bent,* 7 Pick. 61, 62; *Thomson* v. *Carruth,* 218 Mass. 524, 530–531, *S. C.* 220 Mass. 77, 79.

3. There is no testimony which would support any finding about the basic issue which is when the alteration in the figures "$160,000" took place. The testimony, mentioned

above, of one witness to the will that the will was in "Mr. Flynn's writing to my knowledge" in context referred to the will as a whole. It was not directed specifically to the figures "$160,000," and has no tendency to indicate that the alteration was made before December 24, 1958, rather than afterwards. The handwriting expert did not express any opinion on this issue, and, indeed, testified that "there is no agency . . . that will date the ink on a document . . . ." The proponents thus obtain no help and suffer no harm from her testimony on the issue of the date of the alteration.

Nothing in the appearance or provisions of the document itself shows that the change was made before its execution. This alteration is not a simple typographical correction, or the perfection of a technical or administrative provision (e.g. trust powers), likely to be made only by or at the direction of a lawyer. A lawyer would probably at least have caused even such routine corrections to be rewritten, or to be initialed by the testator and the witnesses. Even if an inference might be drawn that such a purely formal alteration was made prior to the execution of the will, there is no basis for any such inference in the case of this substantial alteration of the substantive terms of a very considerable bequest. The circumstances call for explanation and for presentation of all available evidence about how the alteration occurred and the subsequent custody of the will.

The proponents have not sustained the burden of proof resting upon them to show that the alteration took place before the will was executed. It seems appropriate to remand the case for further hearing for, in addition to evidence about the custody of the document on and after December 24, 1958, it may be possible to present further testimony about the background and circumstances of the drafting, alteration, and execution of the will and other relevant matters. It is possible also that there may be further expert testimony about the alterations and about what the amount of the disputed gift to the widow was before the alterations.

In anticipation of a new hearing, one further matter should be discussed. It is clear that Flynn had included a gift of at least some stocks to his widow in the will before the alteration. The will on its face indicates that at all times there were figures "0 000" in this gift. If so, the original gift could not have been less than $10,000. The digit "1" could have been covered by an altered "6." No other digit from 1 to 9, inclusive, could easily thus have been covered. If at the new hearing the proponents fail to establish that the alteration occurred prior to execution of the will or the actual amount of the original gift before the alteration, the record at the new hearing may be such as to make it appropriate to admit the unaltered document to probate, treating the gift to the widow as having been in the minimum amount of $10,000.

4. The final decree is reversed, and the case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*