CURRIER GALLERY OF ART *vs.* STEPHEN J. PACKARD & another, executors.[1] March 6, 1987. *Will*, Execution, Validity, Revocation, Alteration, Codicil.

We affirm the decision of a judge of a Probate Court admitting to probate a second codicil described below.

The will of Marjorie T. Packard dated September 4, 1969, and a first codicil thereto dated December 1, 1970, were admitted to probate on May 4, 1978. In August, 1985, the Currier Gallery of Art, located in Manchester, New Hampshire, offered a document for probate as a second codicil. Unlike the will and first codicil, which were lawyerly, this document is rather homespun. Dated November 15, 1971, it is typed on what appears to be the decedent's personal stationery, is addressed "To whom it may concern," and (before the interlineation and addition discussed below) stated in part:

> "I give and bequeath — at my direction or if still in my possession at my death — to the Trustees of the Currier Gallery . . . my maple New Hampshire chest-on-chest . . . identified as a Dunlap piece[2] . . . in memory of my brother, Donald Kingman Packard."

The instrument stated, further, that Donald Packard had been a longtime summer resident of the Manchester area, and was known as a local historian and collector of early regional clocks and furniture.[3] The decedent signed the instrument and it was attested by two witnesses.

On January 15, 1975, the decedent drew lines through the words "if still in my possession" and wrote by hand, in apparent substitution, the words "when I can no longer use it or." She initialed and dated the alterations but did not have the paper attested by witnesses.

---

[1] David Packard.

[2] We take the liberty of departing from the record to note that John Dunlap (1746-1792), his brother Samuel (1752-1820), and Samuel's four sons operated a carpentry and cabinet-making business in the Manchester area. Their furniture is said to exhibit a distinctive local tradition of design and ornamentation based on the Chippendale style. See Fairbanks & Bates, American Furniture 1620 to the Present 304-305 (1981).

[3] He was residuary legatee under the will of September 4, 1969.

Opposing probate, the executors of the will and first codicil argued that the instrument as altered could not qualify for probate because, first, it was too informal to serve as a codicil, and, second, it was not testamentary in content, but rather declared an intention (unenforceable) to make an inter vivos gift of the piece.

As it stood on November 15, 1971, the instrument was in writing, signed by the decedent (whose capacity is not challenged), and attested by two witnesses.[4] No more was required on the formal side to make an effective codicil (or will). See *Taft* v. *Stearns*, 234 Mass. 273, 275-276 (1920); Lombard, Probate Law and Practice § 1641, at 411-412 (1962 & 1987 Supp.). It did not matter for this purpose that the paper was not labelled "codicil," did not refer to the will or first codicil, and generally lacked sophistication. See Lombard, *supra*. Moreover, the substance was testamentary. "At my direction" may be read as the equivalent or, indeed, as a reinforcement of the expression "give and bequeath" (the will used "direct" repeatedly in such a testamentary sense). The words "if still in my possession" then merely note the possibility that the piece may pass from the testatrix and be unavailable for disposition at her death; the same would apply even if the bequest was in unqualified terms. Another, perhaps more difficult way to read the text is that the testatrix may by her direction choose to give the piece to the Gallery before her death but, if it remains in her possession at her death, it shall pass to the Gallery. In that view, too, testamentary character and intention are preserved. See *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 470-471 (1944).

We turn to the possible effects of the handwritten changes. Being unattested, they were not themselves effective. See *Putnam* v. *Neubrand*, 329 Mass. 453, 460 (1952). Cf. *Wilton* v. *Humphreys*, 176 Mass. 253, 257-258 (1900). What would have been the testratix's intention in that circumstance? That the attempt at change should have at least the result of cancelling (revoking) the crossed-out words, leaving the rest of the original instrument intact? See *Walter* v. *Walter*, 301 Mass. 289, 291 (1938); *Schneider* v. *Harrington*, 320 Mass. 723, 724 (1947). Or that the original instrument should remain wholly intact, cancellation of the crossed-out words being desired only if the changes were effective (a conditional revocation, sometimes called "dependent relative revocation")? See *Schneider,* 320 Mass. at 725-726; *Flynn* v. *Barrington,* 342 Mass. 189, 194 (1961).[5]

We need not attempt a choice because the result in either case is testamentary. On the latter tack, we have a testamentary gift as explained above.

---

[4] The required number of witnesses was reduced from three to two by legislation applying to persons dying on or after January 1, 1978. G. L. c. 191, § 1, as amended by St. 1976, c. 515, § 3. Marjorie Packard died on February 24, 1978.

[5] The defendant executors do not argue that the testatrix by her interlineation and addition intended to revoke the instrument entirely. Compare *Worcester Bank & Trust Co.* v. *Ellis*, 292 Mass. 88, 92-94 (1935).

On the former, we have the text "I give and bequeath — at my direction or at my death — to the Trustees." The executors, by evident mistake, elide or disregard the words "or at my death." Restoring those words, we have — giving the executors the benefit of a difficult reading — a statement that the testatrix may choose to "direct" the piece to the Gallery before she dies, otherwise it passes to the Gallery at her death. This is little different from the meaning of the original instrument, and is sufficiently testamentary. The result is to memorialize the testatrix's brother, who would have been a beneficiary of her will had he survived her (see n. 3), by a charitable bequest appropriate to his interests.

*Decree affirmed.*

*Wendy P. Solovay* for the defendants.
*J. Allen Holland, Jr.* (*Alan R. Hoffman* with him) for the plaintiff.